232 P.3d 880 (2010)
In re J.O., a Minor Child Under Eighteen (18) Years of Age.
No. 103,481.
Court of Appeals of Kansas.
May 6, 2010.
*881 Susan G. Richards, of Topeka, for appellant.
Natalie Chalmers, assistant district attorney, and Chadwick J. Taylor, district attorney, for appellee.
*882 Before RULON, C.J., GREENE, J., and LARSON, S.J.
GREENE, J.
P.S., the natural father of J.O. (born September 29, 2007), appeals the district court's termination of his parental rights. Father argues he was denied due process when he was not allowed to participate by telephone in the hearing that resulted in the termination. We agree with Father, reverse the judgment of termination, and remand for further proceedings.

Factual and Procedural Background
Shortly after J.O.'s birth, concerns for J.O.'s safety and well-being caused the State to file a petition to have J.O. declared a child in need of care (CINC) pursuant to the Revised Kansas Code for Care of Children, K.S.A.2009 Supp. 38-2201 et seq. As a result, the district court awarded SRS temporary custody of the child and ordered the State to serve Father, whose whereabouts were unknown by SRS at the time, for paternity testing.
On December 26, 2007, the district court adjudicated J.O. a CINC pursuant to K.S.A. 2009 Supp. 38-2202(d)(1), (2), and (3). Father had not yet appeared by that point, so the court granted a default judgment against him pending proof of service by publication. By the time of the February 5, 2008, disposition hearing, Father had apparently been personally served because he appeared at the hearing in shackles with court-appointed counsel and admitted his paternity.
From the February 2008 hearing until March 2009, the SRS social worker assigned to manage J.O.'s case had telephone contact with Father on only two occasions. The first contact took place shortly after the disposition hearing, when Father called the social worker to indicate he had always wanted to see J.O., but Mother prevented the visit. Father asked to schedule a visit with his son, but he needed to make arrangements for transportation and promised to call the social worker when these arrangements were made. When the social worker had not heard from Father by the following March, she called the number Father had given her, and Father returned the call on March 28 and scheduled a visit with J.O. for the beginning of April. Unfortunately, he failed to show up for that visit; reasons for this failure do not appear in the record.
Father's appointed counsel appeared on his behalf at a November 3, 2008, permanency hearing, at which the district court found reintegration was no longer a viable alternative. Rather, the court found either adoption or permanent custodianship might be in J.O.'s best interests, so it ordered the State to file pleadings to either terminate parental rights or establish permanent custodianship. Accordingly, the State then moved to terminate the parental rights of both Mother and Father.
The social worker was able to reestablish communication with Father in March 2009, after Mother advised that Father was in prison in Colorado. Father's earliest possible release date was 2012, but he continued to correspond by letter with the social worker to inquire how J.O. was doing.
At a June 29, 2009, review hearing, the district court granted Father's counsel's request to continue to October 21, 2009, the trial on the State's motion to terminate his parental rights. Father's counsel also accepted service on Father's behalf.
The case proceeded to a trial on the State's motion to terminate Father's parental rights on October 21, 2009. At the opening of the trial, the district court considered Father's motion to appear by telephone or video conference. The State and guardian ad litem argued that a court rule prohibited telephonic testimony in a trial on the merits and suggested that case law indicated that a parent's due process rights are not violated if that parent has appointed counsel present at the hearing. Father's counsel responded that in light of Father's desire to be present, she had arranged with Father's counselor at the Colorado prison for Father to be available to the court at 9 a.m. Because this designated hour had passed by the time the court took up the matter, counsel was unable to assure the court that Father would still be available in the counselor's office. Thus, Father's counsel asked for a continuance to *883 allow her to arrange a specific time for Father to be available.
The district court denied counsel's request for Father's telephonic appearance, explaining:
"Well, the Court believes that Supreme Court Rule 145 and . . . K.S.A. 60-243(a) direct that the testimony needs to be in person on the merits of the claim. And the primary factor for concern is the inability of the Court to . . . assess the demeanor of the witness on the stand in determining what level of weight the Court would give to that testimony.
"Further, it's my concern that Father is unable to be present today by his own actions, not by any restriction by the Court or the Agency. But he is in prison in the State of Colorado pursuant to his own behavior and his own actions and suffers the consequence.
"I am not inclined to allow him to participate by telephone and . . . to present testimony by telephone . . . in this proceeding. Supreme Court Rule does not allow that and the statute does not allow that.
"Now, I understand that the Supreme Court says there may be a variance in party but unless or until the Supreme Court authorizes [it] specifically, my sense is that the statute controls.
"And so I am not inclined to authorize his participation in this proceeding by telephone. And as such, that's [a] basis for you to file an appeal and maybe make new law in the State of Kansas. But as the existing law is as I understand it at this point in time, the testimony is to be in court."
At the close of the hearing, the district court granted the State's motion to terminate Father's parental rights. The court orally announced that it was applying the statutory presumption of K.S.A.2009 Supp. 38-2271(a)(5) and also found termination of Father's parental rights was proper under the statutory factors in K.S.A.2009 Supp. 38-2269(b)(4), (b)(7), (b)(8), (c)(3), and (c)(4). The court further announced that in light of Father's incarceration until at least 2012, J.O.'s age, and J.O.'s relationship with his foster family, termination of Father's parental rights was in J.O.'s best interests. In its subsequent journal entry, the court found "that it is highly probable that the evidence establishes a clear and convincing standard that father is unfit by conduct or condition and is not likely to change in the foreseeable future." Father timely appeals.

Standards of Review
Appellate courts generally review a district court's refusal to grant a continuance for an abuse of discretion. In re J.A.H., 285 Kan. 375, 384, 172 P.3d 1 (2007). Under this highly deferential standard of review, we will not overturn a district court's discretionary decision on appeal if reasonable persons could differ about the propriety of that decision. See Schuck v. Rural Telephone Service Co., 286 Kan. 19, 24, 180 P.3d 571 (2008).
A district court's discretionary decisions are not unfettered, however, and must necessarily be made within and take into account any applicable legal standards. Thus, this court will also find the district court abused its discretion on appeal if its decision goes outside the framework of or fails to properly consider statutory limitations or legal standards. See State v. Woodward, 288 Kan. 297, 299, 202 P.3d 15 (2009); see also In re Adoption of B.G.J., 281 Kan. 552, 563, 133 P.3d 1 (2006) ("`Discretion must be exercised, not in opposition to, but in accordance with, established principles of law. It is not an arbitrary power.' [Citation omitted.]").
We have unlimited review of the questions whether Father's due process rights were violated and whether the district court misconstrued a court rule or statute. See In re Adoption of B.J.M., 42 Kan.App.2d 77, 81, 209 P.3d 200 (2009) (unlimited review of legal question of due process); see also Double M Constr. v. Kansas Corporation Comm'n, 288 Kan. 268, 271, 202 P.3d 7 (2009) (unlimited review when statutory construction involved).

Has Father Waived His Due Process Challenge?
The State initially suggests that we should summarily deny Father's due process challenge because Father has waived the issue by failure to raise it below. See Miller *884 v. Bartle, 283 Kan. 108, 119, 150 P.3d 1282 (2007) (constitutional grounds for reversal asserted for the first time on appeal are generally not properly before the appellate court for review).
We disagree. Father's counsel attempted to assert and protect Father's due process rights by requesting a continuance to secure Father's appearance by telephone. Although counsel's argument was not expressly couched in due process terms, the issue was squarely framed and decided by the district court. Thus, it is properly before us on review.

Did the District Court Err in Conducting the Termination Hearing Without Father's Requested Participation?
Father's sole contention in this appeal is that he was denied due process when the court denied his request to appear by telephone or for a continuance and instead proceeded with a termination trial in his absence. In other words, he argues he was denied the opportunity to be heard at a meaningful time and in a meaningful manner. See In re J.D.C., 284 Kan. 155, 166, 159 P.3d 974 (2007) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").
Our courts employ a multiple-step analysis in reviewing whether a civil litigant's procedural due process rights were violated. The first step requires the determination of whether a protected liberty or property interest is at stake. If so, the second step requires a determination of the nature and extent of the process due. In re J.D.C., 284 Kan. at 166, 159 P.3d 974.
With regard to the first step of the due process analysis, Father argues he had a protected fundamental liberty interest in parenting J.O. In support, he points out that our courts have consistently recognized that a parent's right to make decisions regarding the care, custody, and control of his or her child is a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution. See 284 Kan. at 166, 159 P.3d 974; In re Adoption of B.J.M., 42 Kan.App.2d at 81, 209 P.3d 200.
The State counters that because Father never developed a relationship with J.O., his fundamental right to parent J.O. never ripened to a protected liberty interest. In support, the State relies on Lehr v. Robertson, 463 U.S. 248, 260, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), and In re Adoption of A.A.T., 287 Kan. 590, 601, 196 P.3d 1180 (2008), which recognized that a mere biological connection of an unwed father does not establish a protected liberty interest when analyzing the different issue of a putative father's due process right to notice of adoption proceedings.
The State never made this argument below. To the contrary, the State impliedly recognized Father's fundamental liberty interest and due process rights by giving him notice of all CINC proceedings. And the State never objected to Father's interest in the participation in the CINC and termination proceedings except to argue that court rules prohibited his telephonic participation at the termination hearing. Although Father may not have exhibited much interest in J.O., the record reflects some measure of persistent interest by the Father in J.O.'s well being. Moreover, there is some indication that development of a relationship was hindered by Mother. Finally, we note that the district court did not assess any facts regarding the Father's contacts or interest in the child, but for purposes of denying the telephonic participation, the court relied exclusively on a strict application of Rule 145 (2009 Kan. Ct. R. Annot. 236) and K.S.A. 60-243.
Accordingly, we reject the State's contention that the first requirement of the due process analysis is not satisfied here, and we conclude that Father had a fundamental liberty interest at stake under these circumstances.
Having identified Father's fundamental liberty interest at stake, the next step of the procedural due process analysis requires that we determine both the nature (type) and the extent (quantity) of procedural protection that had to accompany the deprivation of that liberty interest, i.e., the termination of Father's parental rights. See In re Adoption *885 of B.J.M., 42 Kan.App.2d at 82, 209 P.3d 200.
At issue is the district court's conclusion that Rule 145 and K.S.A. 60-243(a) strictly prohibited the court from allowing Father's appearance by telephone at the termination hearing.
Rule 145 provides, in pertinent part: "The court, in its discretion, may use a telephone or other electronic conference to conduct any hearing or conference, other than a trial on the merits." (Emphasis added.)
K.S.A. 60-243(a) provides, in pertinent part: "In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by this article."
There should be no question that both the rule and the statutory provision are intended to protect due process rights of litigants. Indeed, our Supreme Court has stated that the purpose of the rule is to protect the integrity of the judicial process. In re Estate of Broderick, 286 Kan. 1071, 1078, 191 P.3d 284 (2008). The obvious policy underpinning for both the rule and the statutory provision is that the importance of trials on the merits of any and all controversies dictates that live testimony should be presented in order to allow the factfinder every opportunity to assess demeanor and credibility of witnesses. To suggest that the rule and statutory provision prohibit telephonic participation by an incarcerated Father in termination proceedings is to turn the rule and statutory provision on their respective heads. Father's only opportunity to participate in this proceeding (wherein his fundamental liberty interest in parenting his child was at stake) was by telephone because of his incarceration in another state.
The State argues that the rule and statutory provision support the district court's action in denying Father's motion for telephonic participation, citing and relying on our Supreme Court's decision in In re Estate of Broderick. We disagree. In Broderick, the court held under the facts of that case that the district court did not err in following the clear language of Supreme Court Rule 145 to prohibit a pro se party from appearing by telephone at a trial of a will contest on the merits. 286 Kan. 1071, Syl. ¶ 10, 191 P.3d 284. The court noted, however, that other states as well as the Federal Rules allow telephonic testimony in special circumstances. 286 Kan. at 1079, 191 P.3d 284 (citing Barry v. Lindner, 119 Nev. 661, 668, 81 P.3d 537 [2003] [citing cases permitting telephonic testimony, particularly when special circumstances are met]; and Federal Rule of Civil Procedure 43[a][2007] [FRCP 43(a)] [permitting telephonic testimony "`[f]or good cause in compelling circumstances and with appropriate safeguards'"]; and Beltran-Tirado v. I.N.S., 213 F.3d 1179, 1185-86 [9th Cir.2000]). 286 Kan. at 1079, 191 P.3d 284. We do not believe that our Supreme Court intended to declare that the rule must be strictly applied in every circumstance, as demonstrated by the court's comprehensive analysis regarding whether the rule had been preempted by the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. (2006). 286 Kan. at 1080-85, 191 P.3d 284. In fact, the court was careful to tailor its analysis and limit its holding to the facts before it. 286 Kan. at 1080, 191 P.3d 284.
We hold the district court's strict application of Rule 145 and K.S.A. 60-243(c) to prohibit telephonic participation under these circumstances violates constitutional due process requirements. The integrity of the judicial process obviously must include incorporation of some flexibility in the mode of appearance at a trial on the merits for good cause in compelling circumstances, as recognized in FRCP 43(a). Where the only manner of appearance for an incarcerated person to participate in a proceeding to protect a fundamental liberty interest is by telephone, neither the rule nor the statute should prohibit that modicum of due process.
Our court recently analyzed the risk of the erroneous deprivation of a parent's fundamental liberty interests in the care, custody, and control of his child when a father was not allowed to appear at a hearing on the termination of his parental rights in In re Adoption of B.J.M., 42 Kan.App.2d at 84-85, 209 P.3d 200. We adopt that analysis and apply it here to conclude that the district court's refusal to allow Father's telephonic participation *886 at the trial on the termination of his parental rights, solely based on Rule 145 and K.S.A. 60-243(a), was improper.
The State also argues that the risk of prejudice here was nonexistent because Father "would not have been able to overcome any of the presumptions of unfitness" and his presence "would [not] have changed the result of the trial." We certainly recognize the difficulty for an incarcerated parent to escape termination of parental rights, but this is no reason to deny fundamental due process to that parent. In terminating Father's parental rights, the trial court explicitly found that although Father had maintained contact with SRS, he had not maintained any kind of relationship with J.O. after knowing of his birth. Yet, the record suggests that Mother may have either refused or prevented his attempts to see his child. Because he was denied any opportunity to appear at the hearing, Father was wholly deprived of the opportunity to present evidence to counter the district court's finding concerning his lack of efforts.
As to the presumption of unfitness, the district court applied K.S.A.2009 Supp. 38-2271(a)(5) in terminating Father's parental rights. For that presumption to be applied, the State had to establish, by clear and convincing evidence, that
"the child has been in an out-of-home placement, under court order for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home." K.S.A.2009 Supp. 38-2271(a)(5).
By being wholly denied any mode of appearance, Father was also deprived of any chance to meet his burden of rebutting this presumption of unfitness by a preponderance of the evidence. See K.S.A.2009 Supp. 38-2271(b). The same can be said with regard to Father's inability to counter any evidence supporting the district court's other statutory findings in support of termination under K.S.A.2009 Supp. 38-2269(b)(4), (b)(7), (b)(8), (c)(3), and (c)(4).
We conclude that the prejudice caused by Father's complete absence was necessarily unquantifiable and indeterminate, requiring us to reverse and remand for further proceedings. See In re Adoption of B.J.M., 42 Kan.App.2d at 82, 209 P.3d 200. Such a holding is entirely consistent with a host of opinions from our court and with the trend of jurisprudence elsewhere. See, e.g., 42 Kan. App.2d at 85-87, 209 P.3d 200; In re Adoption of J.M.D., 41 Kan.App.2d 157, 202 P.3d 27, rev. granted 289 Kan. 1278 (June 4, 2009); Fischer v. State, 41 Kan.App.2d 764, 206 P.3d 13 (2009), rev. granted 290 Kan. ___ (February 4, 2010); In re J.L.D., 14 Kan.App.2d 487, 490-91, 794 P.2d 319 (1990); In re S.M., 12 Kan.App.2d 255, 738 P.2d 883 (1987); Gentry, Procedural Due Process Rights of Incarcerated Parents in Termination of Parental Rights Proceedings: A Fifty State Analysis, 30 J. Fam. L. 757, 771 (1991-92).
Reversed and remanded for further proceedings.