261 P.3d 934 (2011)
In the Interest of K.E. and S.D.E.
Nos. 105,623, 105,624.
Court of Appeals of Kansas.
August 19, 2011.
*936 Mark Doty, of Gleason & Doty, Chtd., of Ottawa, for appellant.
Heather R. Jones, county attorney, for appellee.
Before GREENE, C.J., MARQUARDT and STANDRIDGE, JJ.
GREENE, C.J.
The natural father (Father) of two minor children, S.D.E., age 11 at time of the district court proceedings, and K.E., a/k/a/ K.A.M., age 9 at that time, appeals the district court's termination of his parental rights. He argues on appeal that the court's denial of both his request for a continuance and his request to testify by phone violated his due process rights, citing and relying on In re J.O., 43 Kan.App.2d 754, 232 P.3d 880 (2010). We conclude that although Father's claim of error regarding the denial of a continuance has been abandoned, the denial of phone participation denied him procedural due process, thus requiring that we reverse and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND
Following a remand order from this court vacating a prior order terminating Father's parental rights, the State filed a subsequent motion to terminate his rights. The matter was set for hearing, and there is no dispute that Father received adequate notice of the hearing.
Despite notice of the hearing, Father did not appear in person. He had indicated an intent to be present but called his counsel on the day of the hearing to advise that he was unable to afford transportation from Georgia to Kansas. At the beginning of the hearing, Father was called on the telephone by the district court. His counsel requested a continuance because Father had planned and *937 wanted to be present but was unable to arrange transportation due to financial issues. Both the State and the guardian ad litem objected to the continuance, and the court denied the request because "it is in the best interest that these children have this proceeding concluded one way or the other."
The court then inquired how Father might be allowed to participate, but learned that Father was on a phone in a church and there was no notary public at that location. In an exchange with the court, Father indicated there was a notary just "down the street" at a funeral home, but the court indicated the notary needed to be in the church. Again, the State and the guardian ad litem objected to Father's telephonic participation because he could not be sworn and would not be subject to effective cross-examination. The court then decided that Father would be permitted to listen to the hearing but he would not be permitted to participate. The court reasoned in part:
"I'll deny the request that you be allowed to present sworn testimony by telephone since first of all we don't have a simple process to get you sworn, but furthermore, that the court has decided that you were given the option to appear in person, chose not to do so, and in fact the right of confrontation and participation is severely limited by your not being here in person to view exhibits and be observed as far as demeanor and such."
At the close of the hearing, and at the repeated requests of the State to find that K.S.A. 60-414(a) applied, the district court applied the statutory presumption of unfitness under K.S.A. 2010 Supp. 38-2271(a)(5), (a)(6), (a)(9), and (a)(13). Father's counsel indicated that he was unable to rebut the presumption because the court had denied his client the right to participate by phone, but he reminded the court that Father had sent "forty some letters" to the children.
Ultimately, the district court held that Father had not rebutted the presumption of unfitness and that the termination of his parental rights was appropriate "under K.S.A. 38-2271 as far as the list that's provided there," as well as under the statutory factors in K.S.A. 2010 Supp. 38-2269(a)(3) or (a)(4). The district court further found from the bench that termination of Father's parental rights was in the children's best interests. The court then asked Father if he had questions, and Father responded, "I have been trying to get in contact with my kids. Why was I not allowed to get in touch with my kids at all? . . . How can you get to know your kids when they refuse to let you even talk to the kids?" The court then stopped Father and said in part, "You can talk to your attorney further about this matter."
The journal entry of termination reflects that Father was presumed unfit under K.S.A. 38-2271(a)(5), and (a)(6), as well as K.S.A. 38-2269(b)(4), (b)(8), and (c)(2).
Father timely appeals.

STANDARDS OF REVIEW
Appellate courts generally review a district court's refusal to grant a continuance for an abuse of discretion. In re J.A.H., 285 Kan. 375, 384, 172 P.3d 1 (2007). Under this highly deferential standard of review, we will not overturn a district court's discretionary decision on appeal if reasonable persons could differ about the propriety of that decision. See Schuck v. Rural Telephone Service Co., 286 Kan. 19, 24, 180 P.3d 571 (2008).
A district court's discretionary decisions are not unfettered, however, and must necessarily be made within and take into account any applicable legal standards. Thus, this court will also find the district court abused its discretion on appeal if its decision goes outside the framework of or fails to properly consider statutory limitations or legal standards. State v. Woodward, 288 Kan. 297, 299, 202 P.3d 15 (2009); see also In re Adoption of B.G.J., 281 Kan. 552, 563, 133 P.3d 1 (2006) ("`Discretion must be exercised, not in opposition to, but in accordance with, established principles of law. It is not an arbitrary power.' [Citation omitted.]").
We have unlimited review of the questions whether Father's due process rights were violated and whether the district court misconstrued a court rule or statute. See In re Adoption of B.J.M., 42 Kan.App.2d 77, 81, 209 P.3d 200 (2009) (unlimited review of legal *938 question of due process); see also Double M Constr. v. Kansas Corporation Comm'n, 288 Kan. 268, 271, 202 P.3d 7 (2009) (unlimited review when statutory construction involved).

DID THE DISTRICT COURT ERR IN REFUSING TO GRANT FATHER A CONTINUANCE?
Father references in the headings of his brief that the district court erred in refusing to grant him a continuance, but the brief fails to discuss or support this argument in any way thereafter. Instead, Father's appellate brief focuses exclusively on his argument that he was denied due process when the district court refused to allow him to testify over the phone. Thus, Father's claim that the district court erred in granting him a continuance must be denied as an abandoned point. An issue not briefed by the appellant is deemed abandoned. Kingsley v. Kansas Dept. of Revenue, 288 Kan. 390, 395, 204 P.3d 562 (2009). A point raised incidentally in a brief and not argued there is likewise deemed abandoned. Cooke v. Gillespie, 285 Kan. 748, 758, 176 P.3d 144 (2008).
We deem this claim of an abuse of discretion to be abandoned on appeal.

DID THE DISTRICT COURT ERR IN REFUSING TO ALLOW FATHER FULL TELEPHONIC PARTICIPATION?
Father next argues that the district court erred in denying his request to testify by phone and that this denial violated his right to procedural due process, relying exclusively on In re J.O., 43 Kan.App.2d 754, 232 P.3d 880.
Indeed, we find this court's decision in In re J.O. to be instructive here, but not determinative given later legislative developments. The district court in that case denied the father's request to participate by phone from prison on the basis that Supreme Court Rule 145 (2009 Kan. Ct. R. Annot. 236) and K.S.A. 60-243(a) only permitted in-court testimony. 43 Kan.App.2d at 756-57, 232 P.3d 880. On appeal, the issue before the Court of Appeals was whether the district court correctly concluded that Rule 145 and K.S.A. 60-243(a) strictly prohibit a witness from testifying by phone. At that time, K.S.A. 60-243(a) stated: "`In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by this article.'" 43 Kan.App.2d at 760, 232 P.3d 880. A panel of this court held that the district court's strict application of Rule 145 and K.S.A. 60-243(c) to prohibit telephonic participation under these circumstances violated constitutional due process requirements.
"The integrity of the judicial process obviously must include incorporation of some flexibility in the mode of appearance at a trial on the merits for good cause in compelling circumstances, as recognized in FRCP 43(a). Where the only manner of appearance for an incarcerated person to participate in a proceeding to protect a fundamental liberty interest is by telephone, neither the rule nor the statute should prohibit that modicum of due process." 43 Kan.App.2d at 761-62, 232 P.3d 880.
Although counsel and the parties fail to cite the legislative change here, the 2010 Kansas Legislature altered the statute to conform to Federal Rule of Civil Procedure 43(a). K.S.A. 60-243(a) now reads in material part:
"At trial, the witness' testimony must be taken in open court, unless otherwise provided by law. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." K.S.A. 2010 Supp. 60-243(a).
Thus, the questions framed by this appeal are compound: Did Father show compelling circumstances for transmission by phone of his testimony? Were appropriate safeguards available under these circumstances? Did the district court abuse its discretion in denying full telephonic participation under these circumstances? Whether or not the amended statute was satisfied, did the denial of such participation violate Father's procedural due process rights?
With regard to compelling circumstances, we share the district court's consternation about Father's last minute decision and declaration that he was unable to be present in person at this hearing. Father received *939 timely notice anddespite his financial issueshe and his counsel could have made advance arrangements for an appearance by telephone and notified the court of that request before the hearing began. Due to the belated appearance by phone, it becomes a close question whether these circumstances were compelling. Here, the district court made no finding either way as to compelling circumstances, but it appears that the court was prepared to accept Father's testimony by phone if it could have been sworn. Thus, compelling circumstances or the lack thereof does not appear to be dispositive here.
But, it appears that the principal issue for the district court was the lack of a notary for administration of an oath. First, this issue may have been a legitimate concern for "appropriate safeguards" as contemplated by the statute. Cf. Fed. R. Civ. Proc. 43a, Advisory Committee Notes, 1996 amendment ("Safeguards must be adopted that ensure accurate identification of the witness. . . .") We note, however, that such safeguards may have been available in the form of a notary public "down the street" and within a few minutes and with a subsequent phone call. It is unclear to this court why the district court did not further explore what appeared to be a viable alternative under the circumstances. Moreover, any concern about identity of Father was alleviated by a voice identification by the State's first witness.
Second, it does not appear that the court considered telephonic administration of the oath. Although there is recent emerging and competing authority regarding testifying by phone, at least one jurisdiction has held that an oath may be administered by the judge to a witness testifying by phonewhether or not the witness is present in the jurisdiction of the court.
"We are not persuaded that a state's boundaries are the correct measure of a judge's ability to administer a valid telephonic oath. Alaska's recognition of the validity of telephonic oaths is not premised upon the witness' physical location, but rather on the witness' constructive presence in the courtroom and ability to provide testimony. One testifying telephonically is physically absent from the courtroom to the same extent whether across the street or on the far side of the globe. Alaska's interests thus dictate that its judicial officers be able to telephonically administer a valid oath to a witness located anywhere in the world, provided she is constructively present in the courtroom via the telephone." Gregg v. Gregg, 776 P.2d 1041, 1044 (Alaska 1989).
Although this appears to be the more enlightened view, we are not yet prepared to hold that Kansas law permits administration of oaths by telephone to one in another state. We note, however, there is no bar to this practice in K.S.A. 2010 Supp. 60-243(a), which clearly contemplates that telephone testimony is permissible under compelling circumstances.
Given our analysis of factors to be considered in construing and applying the amended statute, we turn to the requisite procedural due process analysis set forth in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This analysis requires us to weigh the following factors: (1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the State's interest in the procedures used, including the fiscal and administrative burdens that the additional or substitute procedures would entail. In re Adoption of B.J.M., 42 Kan. App.2d at 84, 209 P.3d 200.
With regard to the first factor, our appellate courts have consistently determined that parents have a fundamental liberty interest in the care, custody, and control of their children. See, e.g., In re J.D.C., 284 Kan. 155, 166, 159 P.3d 974 (2007). This interest is "perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).
With regard to the second factor, we consider that the employment of the presumption of unfitness under K.S.A. 2010 Supp. 38-2271 without any opportunity to mount a rebuttal under 38-2271(b) substantially *940 risked an erroneous deprivation of Father's fundamental interest in the children. Moreover, consideration and reliance by the district court on these and other factors that assessed Father's neglect of the children, failure to maintain contact or communication with the children, and substantial neglect or willful refusal to work toward reintegration of the children, without a full exploration of Father's clear protest that he had been prohibited from such contact by State actors, also risked an erroneous deprivation of his fundamental interest in the children. As is reflected by our analysis above, substitute procedural safeguards should have been considered, including: (1) employment of a notary down the block and subsequent phone testimony; (2) consideration of swearing in Father by the Kansas court; (3) permitting Father to submit a sworn affidavit after the hearing; (4) allowing counsel to explore and present details of Father's protest of prohibited contact of his children before closing the record. Under these circumstances, we must conclude that there was great risk, indeed, that Father was unlawfully deprived of his fundamental liberty interest in his children.
Finally, with regard to the State's interest in the procedures used, it is clear that our statute and case law demonstrate a preference for live testimony in open court where witnesses' credibility is on display for full assessment by the factfinder. We are aware, however, of no fiscal or administrative burden that would have been born by the State in permitting any of the substitute safeguards posed above. Although the State and the district court correctly noted the need for these proceedings to be completed, the alternatives assuring Father's due process rights would not have extended the proceedings more than a few minutes or a few days at most.
For these reasons, we conclude that Father's due process rights were violated when he was deprived of the opportunity to be heard prior to the termination of a fundamental liberty interest.
Since we have found a constitutional violation, the next question is whether Father is entitled to a reversal of the district court's ruling and remand for a retrial. Here, we are concerned that all of the bases for terminating his parental rights could have been tempered or mitigated by Father's testimony. The testimony by State actors regarding Father's efforts toward reintegration after his recent release from prison, coupled with his numerous letters to the children and his complaint that he was denied direct contact with his children, cause us to believe that the error in precluding Father's testimony was necessarily unquantifiable and indeterminate. See State v. Calderon, 270 Kan. 241, 250, 13 P.3d 871 (2000) (citing Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 [1991]). Thus, the due process error was structural and entitles Father to a reversal and remand for further proceedings.
We recognize that Father may have a substantial hill to climb to rebut presumptions of unfitness, but this should not mitigate the degree of due process to which he is entitled before his parental rights are terminated.
Reversed and remanded.
MARQUARDT, J., concurring and dissenting.
I concur with the majority that Father has abandoned his appeal of the district court's denial of his motion for a continuance. However, I respectfully dissent from the majority holding that Father was denied his due process rights at the termination of parental rights hearing.
It is undisputed that Father received timely notice on November 26, 2010, of the motion for termination of parental rights and the hearing scheduled for December 8, 2010, at 1:30 p.m.
Appearing in the courtroom for the hearing were the State; the guardian ad litem; representatives from CASA, KVC, and SRS; maternal grandparents; "a potential foster placement or adoptive resource;" the children's therapist; and Father's attorney, Mark Doty. At the start of the hearing, the court telephoned Father in Atlanta, Georgia. Doty moved for a continuance and stated:
"In lieu of [a continuance], if the court determines that that is not necessary, would ask that he be allowed to appear by *941 telephone. I understand that there is some objection likely from the State and the guardian ad litem to him appearing by telephone because of issues with administering the oath. I guess one thing we might be able to do is inquire as to whether there happens to be a notary public in the church where [Father] is. Another solution that I had just spoken with the county attorney we might be able to do
. . . .
"The other option would be perhaps that we would bifurcate, present everything today other than [Father's] testimony and come back another day for that when we were able to set up a mechanism for him to be administered the oath in Georgia."
The State and the guardian ad litem objected to a continuance because by the date of the hearing the children had been in the State's custody for 32 months and they needed permanency. They also stressed that it was in the best interest of the children to proceed with the hearing. The guardian ad litem emphasized that "[Father] intends to maintain that he's ready to take care of these children, but he's not even ready to be here today to have this hearing after he was notified and given ample opportunity to bring himself here." Doty informed the court that Father had contacted him midmorning on the day of the hearing from Atlanta and said he was unable to arrange for transportation. Father's attorney assumed it was due to a "financial issue."
The court clarified that Father had timely notice of the hearing by certified mail and the hearing did not come as a surprise to him. Doty said that they had anticipated the hearing because "[i]n fact, we've already been to the Court of Appeals once as I'm sure the court has noted in the record and come back, so yes."
The court also inquired of Doty whether Father "had led you somehow or other to believe that he would in fact be here today." Doty responded, "He had told me he would be here today. I did not learn until midmorning today that he would not." The court stated:
". . . I think he has been aware that there would be this proceeding and should have thought in advance about making arrangements for transportation and the monetary issue of getting here and staying here throughout the proceeding prior to just these last few days, so it's my decision not to continue this, we'll proceed. Now, I guess the question is to decide how he might be allowed to participate and to what extent. [Father], can you hear me now?"
"[FATHER]: Yes.
"THE COURT: Is there a notary public in the church there where you're at.
"[FATHER]: No. No, sir.
"THE COURT: No, sir?
"[FATHER]: No, sir. I can get one. There's one down the street.
"THE COURT: Well, could youdo you suppose you could get somebody to come down there to you?
"[FATHER]: No, sir. I know I can't get anybody come down here. There's a funeral home that's just a block away.
"THE COURT: Well, I'm not gonnayou know, they need to come and administer the oath to you there so we can hear it."
The State and the guardian ad litem voiced their objections, after which the court stated:
"Well, this is a termination of parental rights proceeding, and it has been continued in the past. I believe anyway that we need to go forward, and I guess . . . my decision's going to be that I'll let you listen in but not participate. I'm not going to let you participate by providing unsworn testimony or anything in this matter, but you may listen in, and through I guess your attorney anyway he'll present your position in this case. So that's going to be my decision. I'll deny the request that you be allowed to present sworn testimony by telephone since first of all we don't have a simple process to get you sworn, but furthermore, that the court has decided that you were given the option to appear in person, chose not to do so, and in fact the right of confrontation and participation is severely limited by your not being here in *942 person to view exhibits and be observed as far as demeanor and such."
K.S.A. 2010 Supp. 60-243(a) states:
(a) Form and admissibility. At trial, the witness' testimony must be taken in open court, unless otherwise provided by law. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."
The statute is clear that testimony must be taken in open court. It also allows testimony by contemporaneous transmission from a different location with appropriate safeguards. See K.S.A. 2010 Supp. 60-243. Unfortunately, the legislature has not designated what constitutes "appropriate safeguards." However, I do not find Father's reason for not appearing at the hearing to be compelling. Calling his attorney midmorning on the day of the hearing stating that he was unable to "arrange transportation" is not a compelling circumstance, especially since he did not notify the court until the start of the hearing that he would not be there. Because he is living in Atlanta, Georgia, he had to realize before the morning of the hearing that he was not going to appear.
The majority claim that a notary public was available "down the street" and within a few minutes and with a subsequent phone call. The majority ignore Father's statement at the hearing that he could not get "anybody [to] come down here. There's a funeral home that's just a block away." It is not an unequivocal statement that a notary public was available within a few minutes.
The majority implies that the court should have considered telephonic administration of the oath and cites an Alaska case for that proposition. A Kansas court could permit a witness to testify in a contemporaneous transmission from a different location but only with a showing of "good cause in compelling circumstances and with appropriate safeguards." K.S.A. 2010 Supp. 60-243. Father has not provided the court with "good cause in compelling circumstances." He did not notify the court in a timely fashion of his potential problem with transportation. In addition to his failure to provide good cause in compelling circumstances, he made no effort to put appropriate safeguards in place and left the court without any time to do so before the hearing.
The court confirmed that Father had been represented by counsel "throughout this case." Father was not a novice when it came to court proceedings and, in particular, the issues dealing with termination of his parental rights. The first journal entry terminating Father's parental rights was filed on February 16, 2010. The district court terminated his rights, and he appealed that decision to this court. On June 28, 2010, this court vacated that order "pursuant to Rule 7.07(a)," and the case was remanded to the district court.
Recognizing that Father did not appeal the denial of his motion for a continuance, the majority's decision that Father was denied due process is very problematic because:
 Father had no relationship or contact with these children because of his crimes. The evidence is that while he was in prison, he sent 49 letters to the children. All of the letters contained totally inappropriate statements. He had been told to stop the inappropriate statements but failed to do so. The letters could not be given to the children.
 The children are 9 and 11 years old and have been in State custody for 32 months.
 Father was sentenced to life in prison in 1989 for possession of cocaine and was sentenced to 30 years in prison in 2002 for possession of cocaine. He had been in prison for almost all of the children's lives and was finally released on August 17, 2010.
 Father never paid any child support.
 Father is on lifetime parole in Georgia.
 Father received a timely notice of the hearing.
 Father failed to notify the court before the hearing at 1:30 p.m. on December 8, 2010, that he would not appear.
The majority cite In re Adoption of B.J.M., 42 Kan.App.2d 77, 209 P.3d 200 *943 (2009), for support of Father's procedural due process rights. The B.J.M. case dealt with a father who was in prison and the court's denial of his request to be transported to the hearing on a motion to terminate his parental rights. The B.J.M. court stated that after determining that father has a due process right, "[t]he next step in analyzing a procedural due process claim requires us to examine the nature and extent of the process due. Rather than a fixed concept, due process is flexible and calls for such procedural protections as the particular situation demands." (Emphasis added.) 42 Kan.App.2d at 82, 209 P.3d 200.
In re J.L.D., 14 Kan.App.2d 487, 490, 794 P.2d 319 (1990), this court stated: "When the State seeks to terminate the relationship between a parent and child, it must do so by fundamentally fair procedures that meet the requisites of due process." First, we must consider "the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 14 Kan. App.2d at 490, 794 P.2d 319. The J.L.D. court went on to say that "[d]ue process is not a static concept; rather, its requirements vary to assure the basic fairness of each particular action according to its circumstances." 14 Kan.App.2d at 490, 794 P.2d 319.
I recognize that the loss of parental rights is extremely important but it must be weighed against the children's loss of the right to a prompt judicial determination of their status. Here there was no risk of erroneous deprivation of Father's interests because he had timely notice and an opportunity to appear for the hearing or, in the alternative, to give the court timely notice of his inability to appear. The court should not be the one faulted in this case for not allowing Father to testify. It was Father's responsibility to do what was necessary to either appear or notify the court and ask for a timely continuance if he could not appear. K.E. and S.D.E. have had no contact with Father for years and have been in State custody for 32 months. They have a right to a determination of their status. The majority completely ignore the fairness to the children and what is in their best interests.
Father was not denied his due process rights; the district court's decision to terminate Father's parental rights should be affirmed.