272 P.3d 28 (2012)
In the Interest of K.E. and S.D.E.
Nos. 105,623, 105,624.
Supreme Court of Kansas.
March 16, 2012.
*29 Mark Doty, of Gleason & Doty, Chtd., of Ottawa, argued the cause and was on the brief for appellant.
Emily C. Haack, assistant county attorney, argued the cause, and Heather R. Jones, county attorney, was on the brief for appellee.
The opinion of the court was delivered by NUSS, C.J.:
The issue in this case is whether a trial court constitutionally erred in denying a father's last-minute request to provide his testimony by telephone from Georgia in a Kansas hearing to terminate his parental rights. The trial court held that without this testimony, the father then failed to rebut the presumption of his parental unfitness established *30 by the State's evidence. His parental rights therefore were terminated.
A majority of the Court of Appeals panel agreed with the father's claim that the trial court's ruling denied him procedural due process, so it reversed the trial court and remanded for further proceedings. We granted the State's petition for review under K.S.A. 20-3018(b). We now reverse the panel majority and affirm the trial court, albeit for slightly different reasons.

FACTS
The relevant facts are not in dispute. Minors K.E. and S.D.E. entered into State custody on April 2008. Their father (Father) has been imprisoned in Georgia for cocaine-related reasons for most of their lives. In 1989, he was sentenced to life in prison, and in 2002 he received a 30-year sentence. While Father was still in prison, the trial judge terminated Father's parental rights on February 16, 2010. The children were then 10 and 8 years old, respectively. But the Court of Appeals reversed and remanded the case with instructions to vacate the termination order.
After remand, the State again filed motions to terminate Father's parental rights. The State perfected service on him on November 26, 2010, and the termination hearing was scheduled for 12 days later: December 8.
By the day of the termination hearing, Father had been out of prison for approximately 4 months and was serving lifetime parole in Georgia. That morning Father called his attorney, Mark Doty, and informed Doty that he was unable to personally attend the hearing. At the start of the 1:30 p.m. hearing, the trial judge was on the telephone with a manidentifying himself as Fatherwho said he was in a church in Atlanta, Georgia. The judge told the man that he had been given notice of the proceeding "and I understand through your attorney you were unable to be here or just told him today you couldn't be here." The judge asked him to listen to the parties' arguments in order to "make some determination as to whether [he would be] allowed to participate or not."
Doty made three arguments on Father's behalf. First, he requested a continuance. Second, he requested permission for Father to testify by telephone via administration of an oath by a notary publicif the church had one. Third, he requested that the judge bifurcate the proceedings: hearing all other testimony that day and hearing Father's testimony later.
Both the State and the children's guardian ad litem opposed Father's request for a continuance, primarily because the children already had been in state custody for 32 months and a continuance was not in their best interests. The judge then asked Doty if Father had explained to Doty why he was unable to be present. Doty replied, "He was unable to arrange transportation. I think probably a lot was financial issue." Doty then agreed with the judge's statement that "It didn't come to [sic] some surprise that he [Father] received this [notice of hearing to terminate parental rights] on the 26th of November."
The judge told Doty he was "also wondering if he [Father] had led you somehow or other to believe that he would in fact be here today." Doty replied, "He [Father] had told me he would be here today. I did not learn until midmorning today that he [Father] would not."
The judge found that conducting the hearing on that scheduled day was in the best interests of the children and that while Father received proper notice, he failed to appear. The judge therefore denied Father's request for a continuance. He stated:
"I think he [Father] has been aware that there would be this proceeding and should have thought in advance about making arrangements for transportation and the monetary issue of getting here and staying here throughout the proceeding prior to just these last few days, so it's my decision not to continue this, we'll proceed. Now, I guess the question is to decide how he might be allowed to participate and to what extent." (Emphasis added.)
The following telephone colloquy then occurred between the judge in Kansas and Father in Georgia:

*31 "Q: Is there a notary public in the church there where you're at?
"A: No. No, sir.
. . . .
"A: No, sir. I can get one. There's one down the street.
"Q: Well . . . do you suppose you could get somebody to come down there to you [at the church]?
"A: No, sir. I know I can't get anybody come down here. There's a funeral home that's just a block away.
"Q: Well, I'm not gonnayou know, they need to come and administer the oath to you there so we can hear it."
After this exchange, the State and the guardian ad litem also opposed Father's request to testify by telephone. They emphasized the problems with the administration of the oath in Georgia for a Kansas court proceeding. They also pointed out their inability to effectively cross-examine Father on documents admitted into evidence that he would be unable to see on the telephone. The guardian ad litem further contended that without the opportunity to observe Father's demeanor, counsel and the court, as fact finder, would be unable to determine Father's credibility as a witnessan important factor in a proceeding that considered the children's best interests.
After these arguments, the judge denied Father's request to present sworn testimony via telephone. But Father was allowed to listen to the remainder of the proceeding:
"THE COURT: [Father], my decision's going to be that I'll let you listen in but not participate. I'm not going to let you participate by providing unsworn testimony or anything in this matter, but you may listen in, and through I guess your attorney anyway he'll present your position in this case. So that's going to be my decision."
The judge then provided his three-pronged rationale for denying Father's request to testify other than in open court:
"I'll deny the request that you be allowed to present sworn testimony by telephone since first of all we don't have a simple process to get you sworn, but furthermore, that the court has decided that you were given the option to appear in person, chose not to do so, and in fact the right of confrontation and participation is severely limited by your not being here in person to view exhibits and be observed as far as demeanor and such. All right, that's the court's decision."
Following this decision, the judge heard testimony from three witnesses. These were first a social worker who doubled as case manager; then the supervisor of the first witness; and then the children's therapist. They generally testified that it was not in the best interests of the children to reintegrate with Father.
The judge ruled that the State had presented clear and convincing evidence that Father was presumed to be an unfit parent under K.S.A. 60-414(a) and K.S.A. 2010 Supp. 38-2271(a). Accordingly, Father now had the burden of proof under K.S.A. 2010 Supp. 38-2271(b) to rebut the presumption of unfitness. Without Father's telephonic testimony, he had no real rebutting evidence to present. Without such rebutting evidence, the State requested the termination of his parental rights, and the judge agreed. After holding that Father did not rebut the statutory presumption, the judge then concluded that it was in the best interests of the children that Father's parental rights be terminated so the children would be eligible for adoption.
After announcing his ruling, the judge asked Father if he had any questions:
"[Father:] Yes. I have [a] question for the State. I have been trying to get in contact with my kids. Why was I not allowed to get in touch with my kids at all?
. . . . .
"[Father:] How can you get to know your kids when they refuse to let you even talk to the kids?"
The judge then stopped the questioning, advised Father to speak with his attorney, and concluded the proceedings.
A divided Court of Appeals panel reversed the trial judge. The majority held "that Father's due process rights were violated when he was deprived of the opportunity to *32 be heard prior to the termination of a fundamental liberty interest." In re K.E., 46 Kan. App.2d 218, 226, 261 P.3d 934 (2011).

ANALYSIS

Issue: The trial judge did not deny Father due process of law when refusing his last-minute request to testify by telephone.

Neither Father nor the State asked either the Court of Appeals or this court to consider the threshold question of whether Father had an interest worthy of constitutional protection, i.e., requiring due process of law before its deprivation. Nevertheless, we can resolve this case by addressing the question actually raised on appeal: whether Father's due process rights were indeed violated.

Standard of review
"Whether a right to due process has been violated is a question of law, over which an appellate court exercises unlimited review." Davenport Pastures v. Board of Morris County Comm'rs, 291 Kan. 132, Syl. ¶ 2, 238 P.3d 731 (2010).

Discussion
The fundamental due process requirement is "the opportunity to be heard at a meaningful time and in a meaningful manner." In re J.D.C., 284 Kan. 155, 166, 159 P.3d 974 (2007) (citing Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). But "[a] due process violation exists only when a claimant is able to establish that he or she was denied a specific procedural protection to which he or she was entitled." 284 Kan. at 166, 159 P.3d 974.
The specific procedural protection to which the Court of Appeals majority apparently found Father was entitled was the opportunity to be heard through testimony by telephone. In the past K.S.A. 60-243 and Supreme Court Rule 145 generally prohibited telephone testimony. See In re Estate of Broderick, 286 Kan. 1071, 191 P.3d 284 (2008); 2005 Kan. Ct. R. Annot. 214. But effective July 1, 2010, the Kansas Legislature revised K.S.A. 60-243(a) and added language allowing testimony from outside of open court in certain limited instances. It states:
"At trial, the witness' testimony must be taken in open court, unless otherwise provided by law. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." K.S.A. 2010 Supp. 60-243(a).
The revised version of the statute clearly was in effect at the time of the parental rights termination hearing on December 8, 2010.
In Father's brief he argues that the revised statute grants "the trial court discretion to relax the requirement of in person testimony." (Emphasis added.) He similarly contends that "While the bar on testimony by telephone serves important and legitimate purposes it is not an absolute rule." Father therefore reasons that "[i]n order to determine if the trial court in this matter erred in barring the father from testifying by telephone this court must determine if the circumstances warranted relaxation of the rule. The father was unable to appear due to lack of transportation." (Emphasis added.)
The State's brief and petition for review essentially agree with these points. The statutory "requirement" Father acknowledges is that "the witness' testimony must be taken in open court." See K.S.A. 2010 Supp. 60-243(a). The State then emphasizes that any "relaxation of the rule" acknowledged by Father specifically requires a showing of three different elements: "[1] good cause [2] in compelling circumstances [3] and with appropriate safeguards." K.S.A. 2010 Supp. 60-243(a). Finally, the "discretion" acknowledged by Father for judicial relaxation of the rule is also contained in the statute: "[T]he court may permit testimony in open court by contemporaneous transmission from a different location." (Emphasis added.) K.S.A. 2010 Supp. 60-243(a).
In addition to these points, our analytical structure must include concessions correctly made by Father's counsel in oral argument to this court. He first candidly conceded that a movant generally bears the burden of proof on a motion. See, e.g., Wooderson v. Ortho Pharmaceutical Corp., 235 Kan. 387, 412, 681 P.2d 1038 (1984) ("burden *33 of proof is upon the party asserting the affirmative of an issue"); Vorhees v. Baltazar, 283 Kan. 389, Syl. ¶ 2, 153 P.3d 1227 (2007) (party who asserts abuse of discretion bears burden of showing it); In re Care & Treatment of Sipe, 44 Kan.App.2d 584, 592, 239 P.3d 871 (2010) ("[A]s a general rule the burden of proof lies with the moving party or the party asserting the affirmative of an issue."); In re GMA, 30 Kan.App.2d 587, 594, 43 P.3d 881 (2002) (burden of proof generally falls upon the party seeking a change in the status quo [citing 29 Am.Jur.2d, Evidence § 158]). And counsel further conceded Father was the party asking the trial judge to relax the statutory requirement that all testimony be taken in open court.
At the December 8, 2010, hearing, however, no one directly acknowledged awareness of the revision to the statute, i.e., that under certain circumstances testimony outside of open court could be permitted. This included the judge. So the judge could not have knowingly applied the appropriate statutory standard when he denied Father's request to testify telephonically. A district court abuses its discretion when it fails to apply the appropriate law, i.e., the controlling legal standards. See State v. Gonzalez, 290 Kan. 747, 756, 234 P.3d 1 (2010). But as explained below, any abuse of discretion is harmless error under the particular facts of this case.
In his own fashion, the trial judge did find no "good cause in compelling circumstances. . . with appropriate safeguards" to allow Father to present sworn testimony by telephone. He articulated three specific reasons for denying Father's request.
First, and most persuasive, there essentially was no "good cause in compelling circumstances" because Father was "given the option to appear in person, [yet] chose not to do so." (Emphasis added.) Accordingly, the State argues in its brief, "[D]ue to the fact that the father was voluntarily absent from the termination hearing, there was no good cause or compelling circumstances to allow the father to testify by phone. See K.S.A. 60-243 (2010)." This court finding is supported by uncontroverted evidence in the record that shows Father had been served with notice well in advance of the hearing. Although not evidence, it is also supported by his attorney's informing the judge that Father previously had told counsel that Father would be attending that day but then told counsel the morning of the hearing that he would not attend. And while his attorney also told the judge that Father did not attend because he was unable to find transportation, the rest of the explanation is counsel's speculation: "I think probably a lot was financial issue."
Second, the judge essentially found there were no "appropriate safeguards" because, "We don't have a simple process to get [Father] sworn." This finding is supported in the record by Father's admission that he could not get a notary public, particularly one from the neighborhood funeral home, to come to the church in Atlanta and ostensibly administer an oath that the judge could hear for Father to testify by telephone in a Kansas proceeding.
Third, when the judge stated "the [Father's] right of confrontation and participation is severely limited by [Father] not being here in person to view exhibits and be observed as far as demeanor and such," he conceivably found no statutory "good cause" or no "compelling circumstances" or no "appropriate safeguards." This finding is supported in the record both by specific objections of the State and the guardian ad litem and by the acknowledgment that Father was on the telephone in Atlanta at the time of the hearing in Kansas.
Inherent in all these trial judge determinations is a conclusion that Father simply did not meet his burden to convince the judge to allow his telephone testimony. See Sipe, 44 Kan.App.2d at 592, 239 P.3d 871 ("as a general rule the burden of proof lies with the moving party or the party asserting the affirmative of an issue"). Indeed, the only grounds possibly offered by Father were mentioned above: simply his counsel's unsworn statement that "[Father] was unable to arrange transportation" and counsel's speculation: "I think probably a lot was financial issue."
*34 Any trial judge failure to acknowledge and consciously follow the revised statute is harmless because his analysis was the functional equivalent of what was technically required by the statute. Consequently, any failure was harmless under either standard expressed in State v. Ward, 292 Kan. 541, 569, 256 P.3d 801 (2011) (explaining differing harmlessness standards when error infringes upon constitutional right and when error does not infringe upon constitutional right).
This analysis reveals our fundamental disagreement with the Court of Appeals majority's interpretation of the trial judge decision. While the panel did review the decision under the revised statute, it held that the trial court "made no finding either way as to compelling circumstances, but it appears that the court was prepared to accept Father's testimony by phone if it could have been sworn. Thus, compelling circumstances or the lack thereof does not appear to be dispositive here." In re K.E., 46 Kan.App.2d at 224, 261 P.3d 934.
But the panel's conclusion overlooks the trial judge's critical findingand one of his three bases for denying Father's motion that Father was "given the option to appear in person, [yet] chose not to do so." It also does not consider the trial judge's finding that Father's absence would cause a problem because he could not view exhibits and because counsel and the judge could not view Father's demeanor, i.e., for credibility purposes. Moreover, the panel makes no mention of the statutory need for a showing of "good cause" to allow testimony other than in open court.
The panel majority instead seemed to focus on the "appropriate safeguards" factor in the revised statute and effectively declared the trial judge should have done more to consider, and perhaps supply, "substitute procedural safeguards." It stated, for example, that "[i]t is unclear to this court why the district court did not further explore what appeared to be a viable alternative [a notary "down the street" to administer the oath] under the circumstances." In re K.E., 46 Kan.App.2d at 224, 261 P.3d 934. The panel majority also held "it does not appear that the court considered [its own] telephonic administration of the oath." 46 Kan.App.2d at 224, 261 P.3d 934. But this detailed appellate analysis of appropriate safeguards becomes unnecessary once it is determined the trial judge essentially has found no "good cause in compelling circumstances" had been established by Father.
In conclusion, we hold that Father was given appropriate notice of the time, place, and purpose of his parental rights termination hearing, and an opportunity to appear there and be heard in a meaningful manner. He then simply failed to carry his burden to meet the standards provided in K.S.A. 2010 Supp. 60-243(a) to establish that his testimony by telephone was warranted. Due process was afforded.
Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.