NOT DESIGNATED FOR PUBLICATION

No. 115,727

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of O.C.R.D., YOB 2012

MEMORANDUM OPINION

Appeal from Johnson District Court; KATHLEEN SLOAN, judge. Opinion filed February 3, 2017. Affirmed.

*Richard P. Klein*, of Olathe, for appellant natural mother.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, for appellee.

Before HILL, P.J., PIERRON and GARDNER, JJ.

*Per Curiam*:  The natural mother of O.C.R.D. (Mother) appeals the district court's termination of her parental rights. After considering the arguments made by counsel and the evidence in the record on appeal, we affirm the district court's decision.

*Factual background*

In December 2012, the State filed the child in need of care (CINC) petition, which initiated this action. The petition was filed after law enforcement was called to the scene of an injury accident. Witnesses told authorities that they saw Mother and J.R. (Stepfather) standing on the side of the road. A car approached, and the witnesses saw Mother and Stepfather step into the road with O.C.R.D. in her stroller. As the vehicle swerved out of the way, Mother shoved the stroller forward, striking the vehicle. O.C.R.D., who was 9 months old at the time, was taken into police protective custody.

1

Mother entered a no contest plea to the allegations made in the CINC petition. Mother was given reintegration tasks, which included obtaining and maintaining safe and stable housing, maintaining suitable levels of cleanliness, budgeting, employment, and a psychological evaluation. In 2013, the State filed a CINC petition for O.C.R.D.'s sibling, C.R. Mother's parental rights to C.R. were terminated in December 2014.

Mother continued to work her case plan tasks until May 2015, when the district court declined to extend Mother's reintegration plan. In October 2015, the State filed a motion seeking to have Mother's parental rights terminated as to O.C.R.D. The State listed statutory bases which included K.S.A. 2015 Supp. 38-2269(b)(1), (b)(2), (b)(3), (b)(4), (b)(7), (b)(8), and (c)(3).

The district court held an evidentiary hearing in order to consider the State's petition. O.C.R.D.'s biological father relinquished his parental rights. After considering the evidence, testimony from witnesses, and arguments from counsel, the district court found clear and convincing evidence that Mother was unfit under K.S.A. 2015 Supp. 38-2269(b)(7), (b)(8), and (c)(3). After finding that Mother's unfitness was unlikely to change in the foreseeable future and that termination was in O.C.R.D.'s best interests, Mother's rights were terminated. Mother timely appeals that decision to this court.

*Clear and convincing evidence supports a finding of unfitness*

Mother contends that her case is not a "typical" parental termination case in that she was a mother trying her best who just needed a little more time. She maintains that she made progress in this case despite KVC's failure to help her achieve reintegration. Mother contends that KVC's efforts to rehabilitate her family were unreasonable because the agency failed to communicate how Mother was failing to achieve reintegration. Mother maintains that she "significantly changed her life" during the pendency of this case by improving her housing and employment. Moreover, Mother believes that the

district court's prediction regarding future unfitness ignored the progress made in the case.

The Kansas Legislature has specified that the State must prove by clear and convincing evidence that a parent's rights should be terminated. K.S.A. 2015 Supp. 38-2269(a). When an appellate court reviews a district court's determination that termination of parental rights is appropriate, it should consider whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable that the parent's rights should be terminated. *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

Mother missed several court appearances during the reintegration period, and her attorney at times struggled to make contact with her. Communication was also an issue with KVC; during periods of the case, workers were unable to contact Mother because she did not have a phone. Mother would sometimes respond to e-mails, but contact with Mother outside of visits was an on-going issue. Mother never scheduled a worker-parent meeting despite knowing that she was to have one on a monthly basis.

Housing was one of the primary issues in this case. At a preliminary hearing in March 2014, it was noted that Mother's home was "really bad again." By July 2014, Mother and Stepfather were in their own apartment, and it was "adequate." Mother testified that they "surrendered" this apartment because she could not afford it and because she did not see the point of having a two-bedroom apartment if O.C.R.D. was not living with her. At the termination hearing, the testimony was that Mother and Stepfather were living with Stepfather's parents in a home that was not suitable for O.C.R.D. Leanne Arnold, O.C.R.D.'s case manager, believed that Mother had four different residences

3

during the pendency of the case, and Mother often failed to inform KVC workers about moves. Arnold testified that they met with Mother to discuss housing options, but Mother never asked for any help beyond that.

Mother not only changed residences frequently but also failed to keep her residences in good condition. Walk-throughs showed food out and a lot of clutter. One home was infested with roaches and had urine-soaked clothing on the floor. Concerns over the conditions of Mother's residences persisted from location to location.

Mother testified that she and Stepfather were planning to move to more stable housing, although she did not have documentation. Mother and Stepfather planned to live with O.C.R.D., Stepfather's parents, and Stepfather's sister in a three-bedroom trailer. Stepfather's father has a conviction for attempted murder, meaning that he would never be approved to reside with O.C.R.D. Mother did not see the conviction as a problem and thought that KVC "really shouldn't hold that against someone." Mother could not produce a lease or any other evidence that more appropriate housing would be forthcoming.

Mother told Arnold that she was attending therapy throughout 2015, but workers later determined that Mother was not seen after July 2014. At the time of the termination hearing, Mother told Arnold that she was attempting to get back in to see her therapist, but she produced no verification that this occurred.

Mother never submitted a budget to KVC, despite that being one of her reintegration tasks. Mother did not submit a paycheck stub to KVC after October 2014. As of December 4, 2014, Mother had worked for three employers, with periods of unemployment. KVC had no idea what Mother's income was. Mother had told KVC that she was unable to get paycheck stubs from her employer, although she introduced paycheck stubs as an exhibit at the termination hearing. Mother believed that she had

4

stable employment and thought it was unreasonable to assume that "stable employment" meant having the same job for a length of time.

Mother had visitation scheduled for once per week, supervised at KVC. She missed only seven visits during the length of the permanency plan, but visits never expanded to unsupervised because the visits were not always "appropriate." Most of the concerns stemmed from Stepfather's behavior. Mother defended his behavior as "freedom of speech." But there were also issues with smell due to poor hygiene. Mother struggled when O.C.R.D. had tantrums and had difficulty finding a way to make her feel better. Mother testified that she was never told when her behavior was inappropriate so that she could try to address concerns.

Mother's attempts at reunification became worse after her rights to another child, C.R., were terminated in December of 2014. Mother never asked for help and her situation was often unclear, making it difficult to know what resources to offer. Arnold testified that offering money would not have helped, because Mother had no "plan for long-term stability."

Arnold testified Mother was never in a position where it appeared that she could be an appropriate placement for O.C.R.D. because of on-going instability with finances, housing, and behavior. The testimony was that this instability was not likely to change in the foreseeable future. In Arnold's opinion, there had been no period of long-term stability for the family. And another KVC worker testified that Mother made no improvement during the case plan.

O.C.R.D. has some special needs, including a speech delay, but she showed tremendous improvement once placed with a foster family. Arnold testified that Mother does not understand O.C.R.D.'s needs, thus leaving her unable to meet them.

5

When considering whether a parent is unfit, any one of the factors listed in K.S.A. 2015 Supp. 38-2269(b) or (c) may establish grounds for termination of parental rights. See K.S.A. 2015 Supp. 38-2269(f). In this case, the district court's findings of unfitness under K.S.A. 2015 Supp. 38-2269(b)(7), (b)(8), and (c)(3) are supported by clear and convincing evidence. Housing was a primary issue of this case, and Mother had still not resolved it by the time of the termination hearing. Mother did not appear to understand the concept of "stable employment" and had not been able to progress beyond supervised visits. And perhaps most importantly, testimony established that Mother had no plans for long-term stability. The evidence in the record on appeal supports the district court's findings.

*The district court did not abuse its discretion in finding that termination was in O.C.R.D.'s best interests*

Mother next contends that the district court gave "no consideration" to O.C.R.D.'s best interests when deciding to terminate parental rights. Instead, Mother believes that the "only credible evidence presented at trial" shows that it was not in O.C.R.D.'s best interests to proceed to termination. Mother contends that it was an abuse of discretion for the district court to terminate parental rights without considering O.C.R.D.'s interests.

We review a district court's best interests finding for abuse of discretion. See *In re R.S.*, 50 Kan. App. 2d 1105, 1118, 336 P.3d 903 (2014). A judicial act constitutes an abuse of discretion if the action is not one a reasonable person would take, is based on an error of law, or is based on an error of fact. *Wiles v. American Family Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

When making a determination about best interests, the court must give primary consideration to the physical, mental, and emotional health of the child. If the physical, mental, or emotional needs of the child would best be served by termination of parental

6

rights, the court should order termination. *In re K.R.*, 43 Kan. App. 2d 891, 903, 233 P.3d 746 (2010). When considering these factors, the court must weigh the benefits of permanency for the child without the presence of a parent against the continued presence of the parent and the attendant issues created in the child's life. This requires the court to consider the nature and strength of the relationship between child and parent and the trauma that may be caused to the child by termination. *K.R.*, 43 Kan. App. 2d at 904.

In the case currently before the court, it is undisputed that Mother and O.C.R.D. are bonded. However, undisputed testimony also established that O.C.R.D. made significant progress in her foster placement. Testimony showed that Mother is incapable of meeting O.C.R.D.'s needs because Mother does not understand what the needs are. The district court noted these factors in the journal entry of termination. The district court also noted that O.C.R.D. has been in custody for the "vast majority" of her life and that continuing to wait for permanency was neither "fair nor appropriate."

It appears that the district court properly considered O.C.R.D.'s best interests when terminating Mother's parental rights. The only evidence presented on this factor at the termination hearing was that O.C.R.D. improved in her foster placement. This evidence, combined with the length of time that O.C.R.D. has been out of Mother's care, supports the district court's decision.

*Mother's due process rights were not violated by improper application of the statutory presumption of unfitness*

Mother contends that the district court erroneously relied on the statutory presumption of unfitness in this case without giving Mother appropriate notice and opportunity to respond. But the State never mentioned the presumption of unfitness in its motion to terminate parental rights, and the district court did not expressly rely on the presumption in the journal entry of termination.

To the extent that this issue involves a violation of Mother's constitutional right to due process, the court's standard of review is unlimited. See *In re K.E.*, 294 Kan. 17, 22, 272 P.3d 28 (2012).

The record on appeal shows that the district court did take judicial notice of the termination of Mother's rights to C.R. The district court referenced this prior termination on several occasions. However, there is no evidence that the district court ever relied on the statutory presumption of unfitness, as it did not mention the statute or the presumption. Instead, the district court made all of the findings of fact and conclusions of law that must be made before terminating rights in the absence of the statutory presumption.

We agree that applying the presumption without giving Mother notice and an opportunity to respond would have violated Mother's due process rights. But in this case, the record does not reflect any reliance on the presumption. Moreover, even if the district court did so rely, the record on appeal provides clear and convincing evidence to support the termination in the absence of the presumption. Accordingly, Mother is not entitled to relief on this issue.

Affirmed.