NOT DESIGNATED FOR PUBLICATION

Nos. 115,279
115,486

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

PHILIP ANDRA GRIGSBY,
*Appellant*,

v.

TAMMY LYNN GRIGSBY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed December 9, 2016. Affirmed.

*Philip Andra Grigsby*, pro se appellant.

*Candace S. Bridgess*, of Kansas Legal Services, of Hutchinson, for appellee.

Before POWELL, P.J., PIERRON and HILL, JJ.

*Per Curiam*: Philip Andra Grigsby, an inmate incarcerated in a federal prison in Tucson, Arizona, appeals pro se from various rulings made by the district court regarding his divorce case. While Philip's specific contentions on appeal are difficult to comprehend, it appears he has three main complaints: (1) The district court failed to rule on two poverty affidavits he filed; (2) the district court erred in holding hearings without his participation by telephone; and (3) the district court allowed prejudice against him

1

throughout the divorce action. After a careful review of the record, we find no error on the part of the district court and, therefore, affirm its rulings.

FACTUAL AND PROCEDURAL BACKGROUND

Philip and Tammy Lynn Grigsby were married September 2, 2000, and two children were born of the marriage:  the first in 2001 and the second in 2002.

In July 2012, Philip was arrested and eventually convicted of eight counts of sexual exploitation of a child involving one minor victim, one count of possession of child pornography, and one count of felon in possession of a firearm. In May 2013, Philip was sentenced in federal court to 260 years in prison and ordered to pay $140,000 in restitution.

Philip filed for divorce from Tammy on July 9, 2013, indicating at the time that he was residing at the Harvey County Jail. A docket fee in the amount of $176 was paid on his behalf by a third party. On March 7, 2014, the district court granted the divorce but bifurcated all remaining issues between the parties for future consideration.

On May 1, 2014, Philip filed a poverty affidavit, indicating that as an inmate who was serving a 260-year sentence, unemployed, and indigent, he was unable to pay the docket fee. Philip filed a second poverty affidavit in October 2014 that contained the same information as the first.

At a hearing on August 7, 2014, the district court appointed a mediator to the case. The journal entry memorializing the hearing indicated that Philip appeared by telephone. On September 3, 2014, the court filed a notice of scheduled mediation to be held on October 6, 2014, and it provided a phone number for Philip to use when calling in for the mediation session.

2

On September 8, 2014, Philip filed a motion requesting that the court reschedule any mediation conferences and/or hearings via telephone that Philip failed to attend without notice. Philip indicated that lockdowns were a frequent occurrence in the prison, and inmates were confined to their cells without telephone access. Philip asserted that staff availability to supervise a telephone conference could be denied at the scheduled time without notice due to any number of situations.

On October 3, 2014, Philip filed a motion requesting the removal of a no contact order that prohibited contact with his children. The motion indicated that Tammy obtained the order through the federal court and requested that the district court order Tammy to remove her no contact order on the federal level and allow the State of Kansas to delegate parental contact. The district court denied Philip's motion, indicating it did not have the authority to order a federal district court judge or the United States Bureau of Prisons to take any action in regard to any matter.

The record is replete with numerous additional motions filed by Philip that are not relevant to the specific issues raised. On November 16, 2015, the district court filed an order denying the motions for failure to prosecute, indicating that Philip had failed to appear at the hearing on the motions. Philip filed a notice of appeal from the November 2015 order denying his motions on November 24, 2015.

On November 17, 2015, the district court filed a notice of trial for January 4, 2016. After the trial Philip filed a second notice of appeal dated January 11, 2016. On February 16, 2016, the final journal entry of judgment was filed. Philip's appeals ultimately were consolidated by this court.

On March 23, 2016, this court ordered the parties to show cause as to why the appeal should not be dismissed because Philip had indicated on his docketing statement that the judgment being appealed was not a final order. Both parties responded to the

3

show cause order, and Tammy provided the journal entry indicating that a final order had been entered. Although Philip's notice of appeal was premature, the appeal was retained.

DID THE DISTRICT COURT ERR BY FAILING TO RULE ON THE POVERTY AFFIDAVITS?

Philip argues that the district court erred by failing to rule on the poverty affidavits. Tammy responds that this issue is moot. A case is moot when no further controversy exists between the parties and where any judgment of the court would be without effect. *Rodarte v. Kansas Dept. of Transportation*, 30 Kan. App. 2d 172, 183, 39 P.3d 675, *rev. denied* 274 Kan. 1113 (2002).

Philip filed for divorce on July 9, 2013, and the docket fee of $176 was paid on his behalf by a third party. Philip later filed two poverty affidavits indicating that he was unable pay the full docket fee. The record does not show that the district court ruled on these affidavits. Both of the affidavits were filed under K.S.A. 2015 Supp. 60-2001(b), which provides, in relevant part:

"(1) *Effect*. In any case where a plaintiff by reason of poverty is unable to pay a docket fee, and an affidavit so stating is filed, no fee will be required. An inmate in the custody of the secretary of corrections may file a poverty affidavit only if the inmate attaches a statement disclosing the average account balance, or the total deposits, whichever is less, in the inmate's trust fund for each month in: (A) The six-month period preceding the filing of the action; or (B) the current period of incarceration, whichever is shorter. Such statement shall be certified by the secretary. On receipt of the affidavit and attached statement, the court shall determine the initial fee to be assessed for filing the action and in no event shall the court require an inmate to pay less than $3. . . .

"(2) . . . Such affidavit shall be signed and sworn to by the plaintiff under oath, before one who has authority to administer the oath, under penalty of perjury, K.S.A. 2015 Supp. 21-5903, and amendments thereto. The form of the affidavit shall be deemed sufficient if in substantial compliance with the form set forth by the judicial council.

4

"(3) . . . The court shall review any petition authorized for filing under this subsection."

Neither affidavit complies with the requirements set forth in K.S.A. 2015 Supp. 60-2001(b). There is no statement of Philip's average account balance or total deposits. It also does not appear that the affidavits were signed and sworn to by Philip under oath before a person authorized to administer the oath.

Tammy indicates that the sole purpose of an affidavit filed under K.S.A. 2015 Supp. 60-2001(b) is for an indigent person to file a case without payment of the docket fee. But because Philip's docket fee was paid in full, Tammy argues the issue is moot and that a ruling on the affidavits by the district court would have served no purpose. We agree.

Philip cites to K.S.A. 60-2001(d), which references additional court costs and provides that "[o]ther fees and expenses to be assessed as additional court costs shall be approved by the court . . . . All additional court costs shall be taxed and billed against the parties as directed by the court." Philip notes that two demands for transcript costs were filed by court reporters. On appeal, he requests the court fees and transcript fees be waived.

However, it appears that the poverty affidavits Philip filed relate exclusively to the docket fee. As Tammy notes, Philip has made no showing that additional court costs and fees have been assessed against him. In addition, he has made no showing that he is entitled to a free transcript in his divorce action. Philip asserted the same argument with this court in his response to a March 2016 show cause order requesting that his transcript fees be waived. This court rejected that argument in an order dated April 6, 2016, noting that his transcript request was deemed withdrawn. In a similar order in May 2016, this court specifically noted that Philip was not entitled to a free transcript in a civil matter.

5

Philip's docket fee was paid by a third party. Because K.S.A. 2015 Supp. 60-2001 does not require the district court to rule on poverty affidavits in assessing other court costs and fees, Philip has not shown error or resulting prejudice in the district court's failure to rule on the poverty affidavits.

DID THE DISTRICT COURT ERR IN CONDUCTING HEARINGS
WITHOUT PHILIP'S PARTICIPATION BY TELEPHONE?

Philip's second argument is that the district court erred in conducting telephone hearings without his participation. Philip vaguely references a violation of due process, but he fails to support this claim with caselaw, argument, or factual citations to the record.

Whether a right to due process has been violated is a question of law over which an appellate court has unlimited review. *In re K.E.*, 294 Kan. 17, 22, 272 P.3d 28 (2012). However, a due process argument that is not supported by pertinent authority or by a factual record is deemed waived and abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013). Philip has waived his due process argument by failing to adequately argue his point or develop his arguments. It is not sufficient to merely assert that a due process violation has occurred.

Assuming Philip's complaints on this point are properly before us, it is difficult to ascertain his specific allegations. Supreme Court Rule 145 (2015 Kan. Ct. R. Annot. 255) permits the district court to "use a telephone or other electronic conference to conduct any hearing or conference other than a trial on the merits." Philip indicates that the district court "failed to include in his notice of hearing that [he] could participate via telephone." However, the only notice that Philip references—one dated July 24, 2014—specifically allowed him to participate by telephone and provided the phone number.

6

Philip also refers to a letter he sent to the court on August 4, 2014, in which he informed the court that the facility in which he was incarcerated would need more than 10 working days to set up a conference call between him and the court. Philip claims that official notice from the court that a conference call was necessary would be required before the prison officials would set up the call. Philip also claims he needed additional time to arrange to appear at the August 7, 2014, hearing. But the journal entry from the August 7, 2014, hearing indicates that Philip appeared by telephone.

Philip also references a pro se motion he filed on September 8, 2014, requesting the court reschedule any hearings that he failed to attend via telephone without notice. In his motion, he explained that there were frequent lockdowns in the facility where he was incarcerated and, during the lockdowns, his telephone access was restricted. In addition, he indicated that staff availability to monitor his telephone conference could be denied at the scheduled time without notice. For these reasons, Philip requested that the court automatically reschedule any hearing in which he was scheduled to participate but failed to do so. The district court did not rule on this motion. We consider this request to be inherently unreasonable, as such a request would allow a party to tie up the case indefinitely and enable the party to receive last-minute continuances without any notice to the other parties and witnesses.

Finally, Philip complains about missing a motions hearing that was held on November 12, 2015. However, Philip does not explain why he did not appear by telephone or how the district court's ruling was affected by his absence. There is no evidence that he missed the hearing because he was in lockdown or because the staff was unable to supervise the call. He was given notice of the hearing on September 21, 2015—nearly 2 months prior to the hearing date—and he makes no allegation that he did not have time to arrange for his appearance by telephone. There is nothing in the record showing that he requested a continuance. He merely asks that the rulings at the hearing be reversed and remanded to allow his participation. Because there is no indication that the

district court prevented Philip's participation and because he failed to appear without explanation, we see no error on the part of the district court and reject Philip's request.

WAS THE TRIAL COURT'S DECISION BASED ON PREJUDICE?

Finally, Philip makes a conclusory allegation that the district court allowed prejudice of him throughout this case, pointing to the personal opinions of the court officers, Tammy's attorney, and the mediator appointed by the court. He claims his due process rights were violated by this prejudice concerning his federal charges.

Philip was convicted of eight counts of sexual exploitation of a child involving one minor victim, one count of possession of child pornography, and one count of felon in possession of a firearm. Philip was sentenced in federal court to 260 years in prison and ordered to pay $140,000 in restitution. Given that the parties have two minor children, custody and parenting issues are relevant to the divorce proceedings. While Philip claims in his brief that his son was not a victim of the crime, the record indicates that a no contact order had been issued by the federal court. That fact, plus Philip's lengthy incarceration, greatly impact his ability to parent. Moreover, the financial issues in the divorce were affected by Philip's lengthy incarceration and the federal court's imposition of a $140,000 fine. Philip's ability to support his children and to pay off any debts of the parties were significantly impacted by Philip's crimes. Philip was not improperly prejudiced because of the parties' knowledge of and reference to his federal convictions, as those convictions were relevant to the divorce proceedings.

Affirmed.