NOT DESIGNATED FOR PUBLICATION

Nos. 128,256
128,257
128,258
128,259

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of L.H., L.H., L.H., and T.A., Minor Children

MEMORANDUM OPINION

Appeal from Reno District Court; PATRICIA MACKE DICK, judge. Submitted without oral argument. Opinion filed December 5, 2025. Affirmed.

*Candace S. Bridgess*, of Kansas Legal Services, of Hutchinson, for appellant natural mother.

*Jamie L. Karasek*, assistant district attorney, and *Thomas Stanton*, district attorney, for appellee.

Before COBLE, P.J., ISHERWOOD and HURST, JJ.

PER CURIAM: Mother's four children were removed from her home and placed in State custody after law enforcement investigated a domestic violence incident and found evidence of illegal drug use impacting the children's safety. After adjudicating them as children in need of care (CINC), the court directed the parties to initiate a reintegration plan. At the beginning of the case it appeared reintegration would be possible as Mother had a short period of sobriety and exercised unsupervised overnight visits with the children. However, after a relapse Mother never regained a period of sobriety and for almost the last year of the case she exercised only once monthly supervised visits with the children.

1

After it became clear that Mother could not obtain or maintain sobriety, the State moved from a reunification plan to an adoption plan. Mother continued to test positive for methamphetamine throughout that time—including the first day of the termination hearing. Not only had Mother not achieved any measurable sobriety, she also failed to complete important case plan tasks necessary for her children's safety. The termination hearing demonstrated that Mother's illegal, dangerous drug use not only created an unsafe condition necessitating the children's initial removal from the home, but it inhibited her ability to complete case plan tasks to ensure she could provide for their ongoing physical, mental, and emotional needs. Finding no error, the district court's decision is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 27, 2022, law enforcement responded to a report of a domestic violence incident at the home where Mother, her four children, and Mother's romantic partner and father to her youngest child—referred to in this opinion as Ronald—lived. When officers arrived, they found Mother in the basement with injuries consistent with domestic violence. After Ronald tried to explain the fighting and showed the officers a video depicting some of the altercation, he was ultimately arrested and told not to contact Mother.

While reviewing evidence of the same incident, police officers located 11 videos that showed multiple instances of domestic violence while the children were present. In one video, Ronald forced three of the children to go to the basement and watch Mother so that she would not overdose. Another video showed what appeared to officers to be a methamphetamine pipe and other medications on the ground. When police met Mother on July 6, 2022, she told them that she started the physical altercation, and minimized the abuse. Mother also admitted to recent methamphetamine use, which a urinalysis confirmed. Based on the positive urinalysis and prior allegations of probation violations,

2

the State moved to revoke Mother's probation, which lead to Mother's arrest. Ronald remained in jail at the time of Mother's arrest.

Shortly after the incident, the four children—L.H., age 9; L.H., age 8; L.H., age 5; and T.A., age 2—were taken into police custody. On July 8, the State filed CINC petitions in the three youngest children's cases that alleged each child: (1) "is without adequate parental care, control or subsistence and it is not due solely to the lack of financial means of the child's parents or other custodian. K.S.A. 38-2202(d)(1)"; (2) "is without the care or control necessary for the child's physical, mental or emotional health. K.S.A. 38-2202(d)(2)"; and (3) "has been physically, mentally or emotionally abused or neglected or sexually abused. K.S.A. 38-2202(d)(3)." That same day, the State filed an amended CINC petition in the oldest child's pending case related to truancy and added the same three grounds as alleged in the other children's petitions. A temporary custody hearing was held on July 11 concerning all four cases, and the district court ordered the children into DCF custody.

On July 22, 2022, in Mother's criminal case, the court ordered a suspended sanction for the probation violations and ordered that Mother receive a new drug and alcohol evaluation, follow all recommendations, and not have contact with Ronald outside of approved contact regarding their child. Mother's probation was reinstated for another 12 months starting from July 22.

Saint Francis Ministries (SFM) hosted a joint case planning conference for the children on July 28, 2022. Mother's case plan tasks, listed later in this opinion, focused on creating a safe and secure home—free from drug use and domestic violence—for the children. Mother and a father of some of the children, referred to as Franklin, participated in the case plan meeting, but Ronald did not as he remained in jail at the time.

3

Mother began weekly one-hour supervised visits with the children. On September 1, 2022, the district court adjudicated each of the four children as a CINC on the grounds alleged in the petitions after Mother entered a no contest statement to the claims in the CINC petitions. According to a court report filed by SFM on October 18, 2022, Mother's visitation "increased quickly due to her proving her sobriety, good parenting skills, and working hard on her case plan tasks." As of October 18, the children were taken to Mother's home for visits on Saturdays at noon until Sundays at about 9:00 a.m. At that time, SFM intended to "further increase her visits soon" with Mother's continued demonstration of sobriety and progress.

Mother obtained an updated drug and alcohol assessment as ordered by the court in late July 2022 and then completed outpatient treatment. She received therapy with Dr. Goodman in July before transferring to Jamie B. at Prairie Star; she also attended drug and alcohol treatment at the Substance Abuse Center of Kansas (SACK). The SFM October 18, 2022 court report stated that Mother "made quite a bit of progress to her case plan since this case started" and was "motivated to ger her children reintegrated home." SFM reported they were "very obviously pursuing reintegration with [Mother] and would like to consider reintegration in the next few months." SFM reported that Mother had appropriate housing for her children, reliable transportation, and although she had a few different jobs, consistent employment.

Despite her progress, Mother admitted to her probation officer that she relapsed on methamphetamine on October 31, 2022. On November 9, Mother met with SFM workers at her home, and she informed them about her relapse. Mother asked when her visits could be increased, but SFM stated that they would keep the visits at one overnight per week due to her relapse. According to the court report, Mother became upset and kicked SFM out of her home. The next day, Mother verbally agreed to a safety plan stating that if she used again, her visits would be moved back to supervised.

Between her relapse at the end of October and December 2022, Mother continued attending drug and alcohol counseling, and she graduated outpatient drug treatment on December 7. Mother apparently told SFM that she was recommended to a 12-step program but never showed proof of attendance. SFM confirmed that Mother began seeing Jamie B. at Prairie Star for mental health therapy.

Over the holidays, Mother's visits were increased to two overnights per week. According to a court report filed by SFM on January 10, 2023, one of the children began refusing to attend visits with Mother, and SFM was working to identify the reason for her refusal. An SFM case worker met with Mother after Christmas, and Mother reported working at a fast-food restaurant and at another job, but she did not provide any paystubs. Mother also failed to provide receipts for her rent payments after she no longer had her rent covered through a safety net program.

On January 5, 2023, Mother was called in for a random hair follicle test, which she completed. Her results came back positive for methamphetamine. However, SFM contacted the drug testing company and learned that Mother's levels were not high, and it was possible that the positive result stemmed from her relapse on Halloween. A second case planning conference occurred on January 12, 2023. SFM's court report stated that despite Mother's progress, there were concerns with Mother's decision making and instability after she refused to take accountability on how her substance abuse created a safety concern for her children and dropped the no contact order between her and Ronald—who SFM believed was a safety concern.

After her relapse, Mother continued to have trouble with sobriety. On March 6, 2023, Mother submitted a drug screen to her probation officer which was positive for methamphetamine and THC, and she admitted using methamphetamine on March 1. This was just four months after her admitted relapse on October 31. On March 31, Mother once again tested positive for methamphetamine in a drug screen given by SFM. On

5

April 6, Mother admitted using methamphetamine to her probation officer. She also tested positive for methamphetamine in a drug screen conducted by SFM on April 26.

On May 10, 2023, SFM received reports that Mother was going to be evicted from her home and learned that Mother had been terminated from her employment. Almost a year into the reintegration plan, on June 1, 2023, Mother met with her probation officer and tested positive for methamphetamine and marijuana and admitted using methamphetamine and marijuana on May 28, 2023. Mother was taken into custody, and the State again moved to revoke her probation, alleging that she violated her probation based on her admissions to drug use on multiple occasions, admissions to contact with Ronald, and by engaging in illegal activity of felony theft on May 11 per a new criminal case filed against her. Mother was released from custody in mid-June to complete inpatient treatment, which she did, and she thereafter completed her probation term.

A third case plan conference took place on June 26, 2023. A court report prepared by SFM on June 19 stated that Mother's visits remained only once a week and supervised, explaining that the visits were unable to increase due to positive drug tests and lack of maintaining case plan progress. SFM reported continued concerns with Mother's decision making and instability due to her lack of stability in employment and positive tests for methamphetamine.

On July 6, 2023, the district court held a permanency hearing to review Mother's progress toward reintegration with her children. In each case, the district court found that appropriate agencies had made reasonable efforts to assist and support the family to accomplish the goal set out in the permanency plan but that the progress to achieve the goal of reintegration was not adequate. In each case, the court found that reintegration was no longer a viable goal and that a new plan should be prepared to achieve adoption.

On August 28, the State filed motions to terminate Mother's parental rights as to each child. According to the permanency specialist who took over the case in August 2023, she tried to speak with Mother at a visit with the children in September 2023, but Mother walked out. SFM requested that Mother complete multiple drug screens before the scheduled termination hearing date, but Mother refused the September 26, 2023 screen and tested positive for methamphetamine in the October 24 and November 13 screens.

On November 6, two weeks before the termination hearing was scheduled to begin, the State filed second amended termination of parental rights motions in which it alleged the parents were unfit because of: (1) failure to carry out a reasonable plan approved by the court directed toward the reintegration of the child into a parental home; (2) the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical mental or emotional needs of the child; (3) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family; and (4) lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or condition to meet the needs of the child.

At the request of the parents, the termination hearing was rescheduled to January 19, 2024. The court ordered the parents to submit to drug screens on November 20, the original hearing date, and Mother tested positive for THC and methamphetamine. She admitted using THC and methamphetamine four days prior.

On December 13, 2023, a fourth case planning conference was held in which both fathers participated but Mother did not. On December 18, Mother tested positive for methamphetamine in a drug screen through SFM. At that point, visits were happening once a month and were not increasing. SFM had no information on Mother's progress on her tasks related to her mental health and substance abuse treatment because they did not have a signed release for the information. SFM testified that by this point, reintegration of

7

the children into parental homes was not a possibility due to a lack of progress and communication from the parents.

Mother did show effort shortly before the ultimate termination hearing date. In early January 2024, Mother signed a release of information and SFM confirmed that Mother was receiving mental health services with Prairie Star and that she completed a drug and alcohol assessment at SACK. Mother also purchased a home in March 2024. SFM completed a walkthrough of the home and found it suitable, and although Mother lacked some items for the kids, she submitted receipts showing the purchases. Mother also began working at New Beginnings and submitted paystubs to SFM. However, just a few days before the termination hearing—on March 5 and March 20—Mother completed two drug screens which were both positive for methamphetamine.

*Termination Hearing—March 22, 2024, and May 29, 2024*

On March 22, 2024, the district court held the first day of a two-day termination hearing, and the parents were ordered to submit to a urinalysis that morning. Mother tested positive for methamphetamine on that first day of the hearing. During the first day of the hearing, several witnesses testified for the State. About halfway through the first day of the hearing, Mother's counsel told the court that Mother had left the building by her own choice and that counsel would proceed without her. Testimony was not completed on the first day of the hearing, and the matter was continued to May 29.

Between the first and second day of the hearing, SFM continued work on the cases. In April 2024, SFM requested that Mother submit to random drug screens, but she did not complete them. In April, Mother continued attending appointments at Prairie Star, and she sent updated paystubs to SFM. In May, Mother provided updated paystubs and verification of her house payment. At that time, however, Mother's brother was staying in her home after he moved out of an Oxford House, and SFM sent a background check for

8

him to complete as required by the case plans. The brother's background check was never completed, and Mother explained it was difficult for him to complete because he had a traumatic brain injury. SFM reported that while Mother's sons went to her home for supervised visits, her daughters refused to go on multiple occasions—SFM believed the daughters did not want to attend visits because they were worried Ronald would be there.

Mother tested negative for illegal substances on the morning of the second day of the termination hearing in May 2024. According to testimony from SFM employees, as of the second day of the hearing, Mother had made progress on case plan tasks related to housing, employment, and substance abuse treatment. Mother's housing was more stable than it had been—except another person was still living there who could not be verified as safe because no background check had been completed. Mother also provided evidence of employment.

Ultimately, the SFM case manager said she could not recommend reintegrating any of the children into Mother's home, focusing on Mother's failure to submit negative drug screens in April and May. Mother's negative drug screen from the morning of the second day of the hearing did not change her recommendation because Mother failed to demonstrate an ability to stay off methamphetamine "over the long haul." The case manager lacked confidence that Mother's drug use was likely to change in the foreseeable future and therefore could not recommend reintegration. In her opinion, there were no more services or resources that could be provided to the parents which would make it more likely that the kids could be reintegrated into a parental home in the foreseeable future.

Mother testified that she had completed two drug and alcohol assessments; inpatient treatment with Mirrors in Newton, Kansas; and intensive outpatient treatment with SACK. She said she had been to and continued to see a therapist twice a month at Prairie Star. Mother said her therapist gave her a drug test less than two weeks before and

that it was negative. Mother said she had been consistently seeing Jamie B. at Prairie Star for mental health treatment, other than for three or four months in 2023 when she was incarcerated or in inpatient treatment. At this point, Mother said she is seeing someone at Prairie Star every week. Mother also testified that she was taking five medications related to her mental health issues.

Mother testified to somewhat consistent employment. She said that at the beginning of the case, she was employed full time at Blue Valley Hope for 8-10 months between 2022 and 2023. She was then unemployed for a month before she was incarcerated. After her release and completion of inpatient treatment, she worked at a chain restaurant for about 7 months. Mother said she was currently employed with New Beginnings as a community health worker and had been since February 5, 2024. She said she attempted to send documentation of her employment to SFM.

Mother also testified that at the beginning of the cases, she had overnight visitation with her children from Friday evening until Sunday evening. She said that when SFM learned of her relapse in October 2022, Mother's visitation with her children was reduced significantly and never restored to what it was. She testified that in the last year, her visits were once a month for one hour and supervised at her home. Mother explained that both of her daughters had attended the most recent visit but that her oldest daughter had missed visits because she was working on a school project and visiting another family member.

Mother said that when she left inpatient treatment, she was living with a friend, and then in January or February 2024—shortly before the hearing—Mother bought her home in Burrton. Mother explained that the house had sufficient bedrooms for the children, and if granted overnight visits she would obtain appropriate bedding. Mother testified that she was not using methamphetamine in the first year of the case when her children stayed with her on the weekends. After her relapse in October 2022, though,

10

Mother conceded that she was consistently testing positive for methamphetamine until her negative test the morning of second day of the hearing. Mother explained that it was a lot harder to maintain her sobriety now that her children were not in her life. She said she was still capable of safely taking care of her children despite her drug use, although she wanted a better life for them with a sober mother.

At the conclusion of the testimony and arguments, the district court announced preliminary findings, which included that any testimony at the hearing about actions for which proof had not been provided to SFM—such as assessments, treatment, and descriptions of drug screen results—created credibility issues.

*The district court's judgment*

On July 17, 2024, the district court issued a memorandum opinion in each of the three oldest children's cases. In each child's case, the district court terminated Mother's parental rights. The court found by clear and convincing evidence in each case that Mother's parental rights should be terminated because she was unfit by reason of conduct or condition which rendered her unable to care properly for her child; that the conduct or condition was unlikely to change in the foreseeable future because so little was accomplished in the course of the case; and that it was in the best interests of the children that parental rights be terminated. On July 22, 2024, the district court issued a similar memorandum opinion in the youngest child's case, making nearly identical findings of unfitness as to Mother and determining it would be in the child's best interests to terminate Mother's and Ronald's parental rights to the child. On August 8, 2024, the district court issued an order terminating Mother's parental rights in all four cases.

Mother timely appealed the district court's decision in each of the four cases. Case Nos. 128,256, 128,257, 128,258, and 128,259 were consolidated for appeal in an order issued by this court on November 18, 2024.

11

Mother appeals the termination of her parental rights, arguing the State failed to establish that she was unfit to care for her children because she took steps to complete the case plan tasks and had changed her circumstances to successfully reintegrate with her children. Additionally, Mother contends there was insufficient evidence to establish it was in her four children's best interests to terminate her parental rights.

After a court adjudicates a child as a CINC—meaning the child meets at least one of the statutory definitions of a child in need of care found in K.S.A. 38-2202(d)—the court then makes orders addressing the custody and case plan for the child. K.S.A. 38-2251(b); K.S.A. 38-2253(a) (dispositional hearing). These orders often include court-directed steps for the parents aimed at rehabilitating the family unit and allowing for reintegration of the children with the parents. However, if reintegration is unsuccessful, the case may move into the "termination phase," in which a district court decides whether a parent is unfit and whether it is in the best interests of the child to terminate parental rights. See *In re N.E.*, 316 Kan. 391, 393, 516 P.3d 586 (2022). That occurred here.

Parents have a fundamental right under the federal and state constitutions to a continuing relationship with their child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). To sever this right, the court must find "by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a); *Santosky*, 455 U.S. at 769-70. When determining whether a parent is unfit, the court must consider a statutory list of nonexclusive factors. K.S.A. 38-2269(b). The court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 38-2269(c). Any one of the factors in K.S.A. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination

12

of parental rights. K.S.A. 38-2269(f). If the court makes such a finding of unfitness, it must then determine whether termination of parental rights is in the best interests of the child. K.S.A. 38-2269(g)(1).

On appeal, this court reviews the district court's decision by reviewing the evidence in the most favorable light to the prevailing party to determine whether the district court's finding of unfitness is supported by clear and convincing evidence. In conducting that review, this court does not reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020). Clear and convincing evidence is such that the fact-finder believes the truth of the facts asserted is highly probable. *In re B.D.-Y.*, 286 Kan. at 706.

I.       TERMINATION OF MOTHER'S PARENTAL RIGHTS

The district court found Mother presently unfit to care for her four children based on several statutory factors:

- the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the children (K.S.A. 38-2269[b][3]);
- failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family (K.S.A. 38-2269[b][7]);
- lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the children (K.S.A. 38-2269[b][8]);
- failure to carry out a reasonable plan approved by the court directed toward the reintegration of the child into a parental home (K.S.A. 38-2269[c][3]); and
- failure to maintain regular visitation, contact, or communication with the child or with the custodian of the child (K.S.A. 38-2269[c][2]).

13

Just one of these findings can support a conclusion of unfitness, so this court need not address each one. Additionally, this court finds insufficient evidence in the record to sustain the district court's finding of unfitness under K.S.A. 38-2269(c)(2) for failure to maintain regular visitation, contact, or communication with the child or the child's custodian.

1. *Use of dangerous drugs—K.S.A. 38-2269(b)(3)*

The district court found clear and convincing evidence of "the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." K.S.A. 38-2269(b)(3). There is no dispute that Mother suffers from addiction to dangerous, illegal substances—namely methamphetamine. However, when basing a finding of unfitness on this statutory factor, the evidence must show that the dangerous drug use impacted the parent's ability to care for their children. Mother cites her efforts to overcome this addiction and argues that there is insufficient evidence that her addiction makes her incapable of caring for her children.

Although Mother made efforts toward achieving sobriety, it is undisputed that Mother continued to test positive for methamphetamine throughout the two-year period of this case. The children were initially removed from Mother's custody after police were called to the house for a possible domestic violence incident and reviewed videos evidencing that domestic violence and drug use were present in front of the children. One video allegedly showed Ronald force the children to go to the basement and monitor Mother for overdose. Additionally, before the incident giving rise to this case, the State became involved with Mother because her oldest child was not attending school. Moreover, Mother's illegal drug use resulted in her entanglement with law enforcement through probation violations and a felony theft charge for shoplifting during this case.

14

While Mother points out that she took some important steps towards sobriety, she also admitted to consistently testing positive for methamphetamine until the second day of the termination hearing. Mother argues that she completed a drug and alcohol assessment; inpatient and outpatient drug treatment; and attended substance abuse treatment, which had been regular and ongoing for the last year following her discharge from inpatient treatment. She also had a negative drug test the second day of the hearing. However, as the State points out, the district court questioned the credibility of some of Mother's stated accomplishments because Mother failed to provide verification of treatment to SFM. SFM stated they were unaware she had been receiving substance abuse treatment with Prairie Star and were unaware that it had been going on for a year. Additionally, although there is evidence Mother completed drug and alcohol assessments in July 2022 and January 2024, she failed to attend the case plan meeting on December 13, 2023; had not provided an updated drug and alcohol assessment at that point; and tested positive for methamphetamine on December 18, March 5, and the first day of the hearing on March 22, 2024. So, Mother was still testing positive for methamphetamine after those treatments and assessments.

As the district court noted, Mother's engagement in several treatment options for her drug addiction is commendable. However, the evidence shows that Mother continued to struggle with the same drug addiction throughout the entire case, despite engaging in multiple treatment options. Mother's exhaustion of multiple treatment options without showing the ability to maintain her sobriety for more than a few months supports the district court's finding that Mother's drug use impeded her ability to successfully reintegrate with her children. Mother had significant trouble completing her probation and was ordered to serve at least one jail sanction due to her addiction. Mother's drug use is directly connected to the instability in the home. The district court's finding of unfitness under K.S.A. 38-2269(b)(3) based on Mother's illegal, dangerous drug use is supported by clear and convincing evidence.

15

2. *Failure to carry out a reasonable plan—K.S.A. 38-2269(c)(3)*

The district court also found that Mother failed to carry out a reasonable plan approved by the court directed toward the reintegration of the children into her home as set forth in K.S.A. 38-2269(c)(3). The district court explained that "[t]he main issues identified for improvement to allow for reintegration included substance abuse, housing, mental health services, employment and elimination of domestic violence." The case plan tasks required that Mother:

- Complete a drug and alcohol assessment and follow all recommendations;
- Complete a psychological evaluation and follow all recommendations;
- Complete a mental health intake and follow all recommendations;
- Submit to random drug screens and exhibit negative results each time (with any refused drug screen counting as a positive result);
- Anyone spending significant time around the children must submit to a background check with no prohibited offenses and be able to pass drug screens;
- Maintain housing that meets the needs of the children and provide proof of such by sending copies of her rent and paid utility receipts to SFM monthly; and
- Maintain employment that meets the needs of the children and provide proof of this by providing copies of her paycheck stubs to SFM monthly.

Not surprisingly, many of Mother's failures to complete case plan tasks centered around her addiction. The district court found that drug screens, when completed, showed

16

that Mother continued to test positive for drugs and, at times, refused to give drug screens. In fact, Mother refused drug screens in September 2023 and in April 2024. Then, Mother tested positive for methamphetamine continuously throughout the case, including on the first day of the termination hearing and just before the first day, on March 5 and March 20, 2024.

These positive drug screens prevented Mother from having more visitation with her children. At the start of the case, Mother had weekly one-hour supervised visits with the children that quickly increased to weekly unsupervised overnight visits. However, around January 2023, about six months into the reintegration plan and after Mother's relapse, Mother's visitation with the children was reduced. Because Mother was not making case plan progress, which included maintaining her sobriety, her visitation was not increased. By the time of the termination hearing in March 2024, Mother only had supervised visits once per month. And by that time, two of her children did not want to attend those visits. The purpose of a reintegration plan is to set forth steps for parents to facilitate reunification of the family unit. The evidence shows that Mother's illegal drug use placed her children in harm's way, and her inability to cease that drug use long enough to progress in visits with her children is catastrophic to the reunification efforts. The district court also found that she failed to obtain updated drug and alcohol assessments, which was a case plan requirement due to her continuing drug use.

Mother argues that she completed a majority of the case plan tasks by completing a mental health intake; participating in therapy; obtaining employment and housing; complying with ongoing drug testing; completing a drug and alcohol assessment; completing inpatient and outpatient treatment; and initiating and continuing substance abuse therapy with a counselor. It is true that Mother completed several reintegration tasks, and the district court considered those. However, as the district court noted at the termination hearing, Mother failed to provide the required documentation to demonstrate

17

completion of some of these tasks and, therefore, Mother's testimony regarding some of these tasks lacked credibility.

The district court found that in addition to failing to maintain sobriety, Mother also failed to complete case plan tasks related to her mental health, employment, and housing. The district court found that Mother had moved several times during the case, indicating housing instability. Although Mother made progress on her housing, she lived with her brother and failed to complete a background check for him as required. One of Mother's case plan tasks required that "[a]nyone spending significant time around the children will submit to a background check with no prohibited offenses and be able to pass drug screens." This background check is meant to help ensure the children's safety, and Mother failed to provide it.

Mother claims she has engaged in treatment and therapy, but she failed to provide the relevant releases and information to SFM when requested. The district court found that Mother had a psychological evaluation that suggested follow up and that Mother had failed to follow the recommendations other than recently beginning therapy.

The district court also found that Mother failed to provide proof of steady employment. Although Mother claims to have maintained employment when she could (when she was not incarcerated or in inpatient treatment), she did not provide proof of multiple changes to her employment to SFM, which undermined the credibility of her testimony. Mother did have employment as of the second day of the termination hearing and had provided those paystubs.

Mother clearly made efforts to engage in some of the case plan tasks, but the "implicit, critical requirement for reintegration is that the parents show a sustainable childcare plan." *In re D.G.*, 319 Kan. 446, 458, 555 P.3d 719 (2024). Here, Mother's ability to combat her drug use was a major component of the reintegration plan. Her

continued methamphetamine use impaired her ability to complete the case plan tasks and be a reliable and safe caregiver capable of meeting her children's physical, mental, and emotional needs. See 319 Kan. at 458. Mother's recent efforts to obtain stable, suitable housing and maintain employment, while laudable, were not enough to overcome her continued failure to achieve the case plan tasks in the years before the termination hearing. Moreover, as of the hearing, Mother had still not provided necessary documentation to show the housing was safe. Finally, Mother's failure in these case plan tasks resulted in her inability to have more frequent visits with her children, which inhibits reunification efforts. Viewing the evidence in the most favorable light to the State, this court finds clear and convincing evidence that Mother failed to carry out a reasonable plan for reintegration with her children in the almost two years the cases were open.

3. *Mother's unfitness was unlikely to change in the foreseeable future.*

After determining that the district court's findings of unfitness are supported by clear and convincing evidence, this court must determine whether the district court properly found that such unfitness is unlikely to change in the foreseeable future. K.S.A. 38-2269(a). In this review, the foreseeable future is measured from the perspective of a child—as time perception of a child differs from that of an adult. K.S.A. 38-2201(b)(4); *In re D.G.*, 319 Kan. at 459. The district court found that Mother's unfitness was unlikely to change in the foreseeable future "because so little was accomplished in the course of this case." Although a parent with unlimited time and opportunities might be able to adjust their circumstances to appropriately care for their child, the court cannot extend unlimited opportunities while the child waits for such an adjustment. *In re L.W.*, No. 126,817, 2024 WL 4903500, at *10 (Kan. App. 2024) (unpublished opinion).

When the four children were initially taken into State custody on July 11, 2022, they ranged in age from two to nine. Therefore, at the time of the termination hearing, the

youngest had been out of Mother's home about half of his life. In the two years of this case, Mother had made insufficient progress in overcoming her addiction to dangerous, illegal drugs to ensure the children had a safe, stable home. While Mother made progress in housing and employment, she tested positive for methamphetamine for over a year until she had a single negative test on the morning of the second day of the hearing. This was not an anomaly—it was consistent with the pattern of Mother's continued dangerous drug use throughout the case. An SFM case manager said that Mother had either refused to test or tested positive since she took over the case in August 2023. Given that Mother's addiction contributed to the children's removal from the home related to the domestic violence, and that the children witnessed her drug use, the lack of meaningful progress in this regard demonstrates a likelihood that Mother's unfitness would continue into the foreseeable future.

Mother testified that it was much harder for her to maintain her sobriety without her children in her life. However, Mother cannot use her young children to ensure or facilitate her sobriety. Mother failed to show an ability to consistently maintain her sobriety over time to enable reintegration, and there was nothing at the time of the termination hearing to indicate that Mother's track record would change. At the time of the hearing, she was only seeing her children for supervised visits once per month.

An SFM caseworker testified that if Mother had submitted two consecutive months of negative drug tests before the termination hearing, her recommendation that the children would not be safe in Mother's home might have changed. However, in the two months before the hearing, Mother refused or failed to provide several drug tests. The evidence shows Mother was sober for three months in 2022 when the cases began until her relapse on October 31, 2022. Mother attended outpatient treatment and appeared to have been sober until she tested positive in a hair follicle test in January 2023, although it is possible that positive result was residual from the October 2022 relapse. Even assuming the January 2023 result was unreliable, in the year before the hearing

20

Mother repeatedly tested positive for methamphetamine—including on the first day of the termination hearing. Although Mother made efforts in some areas, her past conduct—particularly multiple relapses into drug use that negatively impacted her ability to parent following short periods of sobriety—demonstrated that her unfitness was unlikely to change in the foreseeable future. This is especially true when measuring her progress through "child time."

Finally, at the time of the termination hearing, Mother had still refused to provide background information for her brother who was living in her home. This small safety measure could have resulted in more regular visits but was left undone. A rational fact-finder could find it highly probable that Mother's conduct or condition which renders her unable to care for her children was unlikely to change in the foreseeable future when the district court terminated her parental rights.

I.   THE CHILDREN'S BEST INTERESTS

After finding a parent unfit and that such unfitness is unlikely to change in the foreseeable future, the court must then consider whether termination of parental rights is in the best interests of the children. In considering the children's best interests, the court should place the most weight on the physical, mental, and emotional health of the child. K.S.A. 38-2269(g)(1). On appeal, this court reviews the district court's best interests determination for an abuse of discretion. *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 60, 392 P.3d 68 (2017). A court abuses its discretion when its decision is based on an error of law, an error of fact, or is unreasonable such that no reasonable person could agree with the determination. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). Because Mother claims the district court abused its direction, she bears the burden of establishing such abuse. See *In re K.E.*, 294 Kan. 17, 23, 272 P.3d 28 (2012).

Here, Mother only argues "that it is not in her four children's best interests to terminate her parental rights." She provides no facts or caselaw supporting this conclusion.

At the time of the termination hearing, the four young children had been out of the home and lacking permanency for almost two years. During that time, Mother failed to show an ability to provide for the children's physical, mental, and emotional needs. After about two years, Mother was only having monthly supervised visits with the children. Moreover, according to SFM and even Mother's testimony, two of the children refused to participate in visits with Mother at the time of the hearing. The domestic violence between Ronald and Mother, the consistent dangerous drug use, and failure to engage in several parts of the case plan provide clear and convincing evidence to support the district court's determination that it was in the children's best interests to terminate Mother's parental rights and provide the children with permanency. Mother does not allege the district court made an error of law or fact in this determination. Furthermore, Mother fails to demonstrate that no reasonable person would agree with the district court's decision. Mother failed to show that the district court abused its discretion in its best interests finding.

CONCLUSION

After almost two years in State custody, Mother failed to overcome her addiction or complete case plan tasks toward reunification with her children. Clear and convincing evidence supported the district court's finding that Mother was unfit at the time of the termination hearing under K.S.A. 38-2269(b)(3) and K.S.A. 38-2269(c)(3). Moreover, Mother's unfitness was unlikely to change in the foreseeable future and the district court

22

did not abuse its discretion in finding that termination of Mother's parental rights was in the children's best interests.

Affirmed.