NOT DESIGNATED FOR PUBLICATION

No. 128,250

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of S.A., S.A., and S.A.,
Minor Children.

MEMORANDUM OPINION

Appeal from Johnson District Court; KATHLEEN SLOAN, judge. Submitted without oral argument. Opinion filed December 12, 2025. Affirmed.

*Richard P. Klein,* of Lenexa, for appellant natural mother.

*Shawn E. Minihan,* assistant district attorney, and *Stephen M. Howe*, district attorney, for appellee.

Before HURST, P.J., GARDNER and BOLTON FLEMING, JJ.

PER CURIAM: The fundamental right to parent one's children is paramount but not absolute. Mother appeals from the termination of her parental rights as to her three children, contending that the State not only failed to present clear and convincing evidence of her current and future unfitness but that the district court also abused its discretion in determining that termination was in their best interests. At the time of the hearing, Mother's children had been out of her physical custody for over two years and lacked consistent visitation with Mother to enable reintegration. Mother lacked appropriate housing; failed to demonstrate employment; and failed to adjust her circumstances to provide for the mental, physical, and emotional needs of her children. Finding no error, the district court's decision is affirmed.

1

This case concerns the termination of Mother's parental rights to three of her children, referred to herein by pseudonyms: Alex, born in 2012; Blake, born in 2014; and Chris, born in 2019. The case does not involve Mother's rights related to her fourth child who was apparently reintegrated with that child's father in November 2023. The facts do not involve the fathers of Alex and Blake, but Chris' father (C.L.) testified at the hearing.

*History of the case*

On June 3, 2021, the State filed a CINC petition in each case alleging Alex, Blake, and Chris were without proper care due to domestic violence in the home, neglect, and abuse.

The State alleged that on June 1, 2021, police responded to a call that Mother's four children were left at a motel without any adult supervision. When police located the children, they had locked themselves out of the hotel room and one of the children had reportedly defecated on the sidewalk. Over an hour after police arrived at the motel, Mother returned and was arrested. On June 2, 2021, Mother was charged with four counts of aggravated endangerment of a child in 21CR1677 in connection with the incident. The district court held a hearing and ordered the children into DCF custody on June 3.

On November 16, 2021, the district court held a hearing at which Mother entered a no contest statement to the allegations in the CINC petition. The district court found the children were CINC pursuant to K.S.A. 38-2202(d)(1), (d)(2), and (d)(3). The district court entered a six-month reintegration plan that required, among other things, that Mother maintain a safe and stable home environment; complete mental health, drug, and alcohol assessments; and maintain appropriate visitation with the children. The reintegration plan was prepared by KVC.

As part of Mother's release on bond from the aggravated child endangerment charges, she was required to complete pretrial supervision. From June 2021 to March 2022, Mother's pretrial supervisor filed multiple noncompliance reports that alleged Mother submitted drug screens that were presumptively positive for alcohol and cocaine, failed to submit to drug screenings, and failed to report as directed. According to the supervisor, Mother did "the minimum" to avoid a further legal action related to her noncompliance.

On February 10, 2022, the district court extended the reintegration plans until May 2022. Mother was subsequently convicted of three amended counts of endangering a child following a guilty plea in 21CR1677, and the district court sentenced her to 12 months of probation starting March 29, 2022. After Mother's time with pretrial services, she began her term of probation, which ran from about April 2022 until December 2023. Her probation supervisor testified that overall Mother was "noncompliant with probation" for failure to report as directed, failure to submit to urinalysis as directed, and leaving the jurisdiction without approval. Relevant portions of Mother's probation violations are discussed more throughout.

*Mother's progress on assessments and classes*

According to KVC case manager Savannah's trial testimony, Mother completed multiple mental health assessments but had not completed the sole recommendation, which was a six-month Parent Management Training Oregon Model (PMTO) program. The PMTO was intended to increase Mother's parenting skills and the family bond and to help the children with behaviors. Kimberly, the PMTO therapist at KVC, testified that Mother only completed 7 of the 13 required modules. Savannah testified that Mother provided certifications that she completed a different parenting program early in the case and six parenting sessions while she was in jail in Minnesota in 2023.

Mother also failed to complete a domestic violence assessment despite numerous attempts by KVC to arrange for its completion. Savannah testified that the assessment was a requirement for approval of her housing in Missouri and that she had been discussing the necessity of the domestic violence assessment with Mother since the case was transferred to her in April 2022—almost two years earlier. Mother testified that she completed a domestic violence assessment on February 8, 2024—a week before the hearing.

*Foster placement and visitation*

Sherrie was the children's first foster placement for about a year from June 2021 through June 2022. In June 2022, the children were moved to another home and were later separated into three separate foster homes due to issues managing their behaviors. Shortly thereafter, KVC began supervising visits due to Mother getting into a verbal argument with a foster parent. In August 2022, Mother's visitation was limited to supervised visits in the KVC office or at a public park.

While living in separate foster homes, the children came together for visits with Mother. Savannah testified that during the one- to two-hour visits, Mother struggled to control the children's behaviors and physical aggression towards each other. At some point, though, things began improving. In January 2023, supervised visits were moved to Mother's home in Missouri. And in February 2023, the visitation was increased to two hours a week in Mother's home and were unsupervised. According to Savannah, things were progressing without any major concerns.

However, the progress did not continue. In April 2023, issues arose with Chris, who said he did not want to visit Mother. Additionally, Savannah testified that KVC received reports of increased behavior concerns from the other children's placements. In May 2023, KVC received a call from Alex's school that there was an unknown male at a

4

visit and that he told Alex he was "going to be her new father" and blamed her for being in State custody. At the same time, KVC received reports that Mother's behavior had been strange in her parenting classes and that Mother had gone to Minnesota. KVC decided to switch back to supervised visits at the KVC office.

Mother told KVC that she did not have transportation, so the visits were done virtually. Throughout the case, Mother reported transportation issues which sometimes prevented her from visiting the kids at the KVC office, and she developed a plan to use public transportation. Mother was sometimes late or missed virtual visits, and at one point, the children reportedly asked Mother during one of the virtual visits if she was in Minnesota. According to Savannah, Mother struggled to spend appropriate time interacting with all of the children during virtual visits to the point that Alex voiced frustration.

At the children's request, the virtual visit on May 31, 2023, ended early, and then Mother did not appear for the next visit on June 8. Mother's speech was reportedly "odd" at the June 12 visit, and Mother failed to show up for visits on June 20 and 26. Mother also failed to show up for an in-person visit on July 10, 2023.

Mother was evicted from her Missouri apartment in June 2023 but told KVC she was moving—not evicted—and she failed to provide an updated address. In July 2023, the State of Minnesota charged Mother with felony first degree assault and charged Mother's brother and sister associated with the alleged attempted murder of Chris' father, C.L. Minnesota officials alleged that on May 22, 2023, Mother's brother shot C.L. and that Mother had physically threatened C.L. shortly before the shooting. At the termination hearing, C.L. alleged that Mother was at the scene of the shooting in Minnesota in May 2023 and that she fled with her brother.

5

The Minnesota incident took place shortly after Mother started virtual visits. Savannah testified that it was possible that Mother was in Minnesota in July 2023 and that was why she did not attend the in-person visit on July 10. Mother's visit on July 24, 2023, was cancelled. A virtual visit on July 31 was cancelled halfway through upon Alex's request. Scheduled virtual visits on August 7 and 14 were cancelled due to Mother's absence.

Mother's probation officer filed a motion to revoke her probation based on Mother leaving the state without authorization, among other things. Mother was arrested in Wyandotte County on August 1, 2023, and after KVC learned of Mother's arrest, they stopped scheduling visits.

On August 9, 2023—eight days after Mother's arrest—the State filed a motion to terminate Mother's parental rights to the three children. The State alleged that Mother was unfit under K.S.A. 38-2269(b)(3); (b)(4); (b)(7); (b)(8); (c)(2); and (c)(3). The State alleged that Mother's unfitness was unlikely to change in the foreseeable future "[i]n light of the duration of the unfitness[ ] and the chronic nature of the parental shortcomings in spite of numerous state and private services."

*Between Mother's arrest and hearing*

Mother was incarcerated in Minnesota from August 18 to November 22, 2023, but Minnesota eventually dropped the charges against her. Savannah spoke with Mother on November 3, 2023, while Mother was still incarcerated in Minnesota, and Mother said she did not have a plan or know where she would live after her release. In December 2023, Mother was transported to a detention center in Johnson County on the warrant for revocation of her probation in 21CR1677.

6

After Mother was released around December 15, 2023, she contacted Savannah and participated in a virtual visit with the children on December 19. Mother had virtual visits on January 9 and 16 due to inclement weather, and no concerns were reported from any of these visits.

On January 23, 2024, Savannah contacted Mother about the domestic violence assessment and the need for updated background check forms for adults living in her grandmother's house where Mother had resided since her release from jail. Though KVC did not have concerns about the grandparents, background checks were required for visitation or potential placement of the children in the home. Those checks were never completed.

Mother requested a virtual visit on January 24, 2024, due to weather, but it was later learned that Mother was in the hospital at the time. During that visit, Mother apparently violated visitation guidelines and rules and began messaging Blake about a court hearing earlier that week.

Mother had successful visits on January 30 and February 6 but was late for the February 13 visit. Savannah testified that during the visits, KVC staff had to intervene because Mother was unable to redirect the children away from arguing and hitting each other.

*Hearing*

The district court held a two-day hearing on the termination of parental rights on February 15 and 16, 2024. The district court heard testimony from several witnesses, including as set forth herein.

On July 19, 2024, the district court filed its memorandum decision in all three cases. The district court explained the circumstances surrounding the children's placement in DCF custody in June 2021, the evidence related to Mother's failure to complete the reintegration plans, her issues complying with probation in 21CR1677, her presence in Minnesota without permission and associated criminal allegations, and C.L.'s testimony about "ongoing domestic violence between himself and [Mother], saying that she had stabbed him in the past." The district court found clear and convincing evidence that Mother was unfit to parent her children based on the six statutory factors in K.S.A. 38-2269 cited by the State. The court further found that Mother's condition of unfitness was unlikely to change in the immediate or foreseeable future. Lastly, the district court found it was in the best interests of the children that Mother's parental rights be terminated, explaining, "These are young children who deserve permanency, and the Court finds that it is not in the best interest of the minor children to wait any longer for permanency."

Mother appealed and the cases were consolidated for purposes of this appeal.

DISCUSSION

Mother argues the district court erred in finding her unfit, finding that her unfitness was unlikely to change, and finding it in the best interests of the children to terminate her parental rights. Parents have a fundamental right under the federal and state constitutions to a continuing relationship with their child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Before severing this right, the court must find "by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is

8

unlikely to change in the foreseeable future." K.S.A. 38-2269(a); see *Santosky*, 455 U.S. at 769-70.

Mother argues the district court's findings of her present unfitness and unfitness for the foreseeable future were not supported by clear and convincing evidence because her drug use did not impede her ability to care for her children; she did not consistently miss or show up late for visits; the agencies' efforts to rehabilitate the family were not reasonable; she changed her circumstances; and she substantially completed her reintegration plan.

I.    TERMINATION OF PARENTAL RIGHTS

When making the unfitness determination, the district court considers a list of nonexclusive factors under K.S.A. 38-2269(b), and when the child is not in the parent's physical custody, it also considers a separate list of nonexclusive factors under K.S.A. 38-2269(c). The court's unfitness determination can be supported by a finding of clear and convincing evidence supporting any single factor in these lists. K.S.A. 38-2269(f). Here, the district court based its finding of unfitness on the following six factors:

- K.S.A 38-2269(b)(3) "due to her ongoing use of dangerous drugs of such duration as to render her unable to care for the ongoing physical, emotional and mental health of her children."
- K.S.A 38-2269(b)(4) "due to her emotional neglect of her children by consistently either missing and being late to visits."
- K.S.A 38-2269(b)(7) "based upon the failure of reasonable efforts made by DCF and KVC to try to rehabilitate the family."
- K.S.A 38-2269(b)(8) "based on her lack of efforts to adjust her circumstances, conduct or conditions to meet the needs of her children."

9

- K.S.A 38-2269(c)(2) "due to her failure to maintain regular visitation, contact or communication with the children or with the custodian of the children."
- K.S.A 38-2269(c)(3) "based upon her failure to complete the tasks on her reintegration plan."

On appeal, this court reviews the evidence in the most favorable light to the State to determine whether the district court's finding of unfitness is supported by clear and convincing evidence. In conducting that review, this court does not reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020). Clear and convincing evidence is such that the fact-finder believes the truth of the facts asserted is highly probable. *In re B.D.-Y.*, 286 Kan. at 705.

While the district court made findings under six factors, a single factor can support a finding of unfitness, and this court need not address each finding. See K.S.A. 38-2269(f). The district court made an unfitness finding under K.S.A. 38-2269(b)(4) because Mother consistently missed visits, which resulted in or caused emotional neglect of the children. On appeal, Mother acknowledges that she missed some visits but argues there was insufficient evidence that her actions affected the children to result in emotional neglect to sustain the district court's finding of unfitness under K.S.A. 38-2269(b)(4). Even if this court disregards the district court's unfitness finding under K.S.A. 38-2269(b)(4), the district court also made a finding of unfitness related to Mother's failure to maintain regular visitation, contact, or communication under K.S.A. 38-2269(c)(2) and for her failure to adjust her circumstances to meet the children's needs under K.S.A. 38-2269(b)(8). These two findings are addressed herein.

1. *K.S.A. 38-2269(c)(2)—failure to maintain regular visitation, contact, or communication*

In these proceedings when a child is not in the custody of their parent, a court may find a parent unfit based on the parent's "failure to maintain regular visitation, contact or communication with the child or with the custodian of the child." K.S.A. 38-2269(c)(2). The district court made such a finding here. The children were not in Mother's physical custody from July 2021 through the hearing in February 2024. During that time, Mother failed to maintain regular visitation that would facilitate reintegration. That means Mother's visitation with the children was not progressing toward an increased amount of unsupervised visitation time.

In July 2022—after the children had been in foster care for about one year— Mother's visitation was changed from unsupervised to supervised visits because of a verbal argument between Mother and a foster care provider. Starting in August 2022, Mother had one- to two-hour supervised visits with the children at the KVC office or in a public park. These visits continued for about a year, and conditions improved such that the visits were moved to supervised visits at Mother's home in January 2023. This progress also occurred because Mother had appropriate housing the children could visit. The positive progression continued, and the visits increased to two hours per week, unsupervised, in February 2023. However, this demonstrated progress toward reunification was short-lived.

In April 2023, after KVC received reports of problems with the children's behavior in their foster placements, KVC switched the visits back to supervised visits at their office. Mother reported transportation issues with travelling to the KVC office, so the visits became virtual. As one would expect, virtual visits with young children can be difficult for anyone, and Mother was no exception. Mother was also inconsistent with timeliness and attendance at these visits, and it later became known that Mother was out

11

of the state in Minnesota—in violation of her Kansas probation—during this time. On May 31, the virtual visit was cut short at one of the children's request. Mother missed the June 8, June 20, and June 26 visits. Mother was supposed to meet the children in person on July 10 but called in and alleged transportation issues.

While this court sympathizes with transportation issues that limit a parent's ability to attend visits at the KVC office, the record reveals that Mother was actually in Minnesota at that time where she was accused of criminal activity. The reduction in quality and quantity of visits resulted from Mother's choice, not her circumstances. Mother then missed visits while incarcerated in Minnesota despite KVC's unsuccessful efforts to schedule visits during that time. There is no record of Mother being in contact with the children from late July 2023 to December 2023. At that point, Alex reportedly said she thought KVC staff were lying to her and that her mother was dead.

After Mother was released from jail in December 2023, she participated in three visits without reported issues. During a visit on January 24, however, Mother violated visitation rules by messaging Blake about a court hearing and seeking emotional support, which concerned KVC staff about Mother's "parentification" of Blake. Finally, in the weeks just before the hearing, Mother was also late to visits on January 30 and on February 13.

At the time of the hearing, Mother was having only virtual or supervised visits with the children once per week at most. Despite progressing toward more meaningful, unsupervised visits at one point, Mother's failure to stay in the state and inability to avoid criminal charges negatively affected her visitation with the children. Even assuming Mother is correct that there is insufficient evidence that her visitation issues resulted in emotional neglect under K.S.A. 38-2269(b)(4), there is clear and convincing evidence to support the district court's finding that she failed "to maintain regular visitation, contact or communication" with her children under K.S.A. 38-2269(c)(2). In more than two years

the children were out of Mother's physical custody, she failed to maintain regular visitation to the point that one child worried she was deceased, at times the youngest did not want to attend visits, and at the time of the termination hearing, the children were unable to have in-person, unsupervised visits with Mother. Reintegration from physical separation requires regular, consistent, and progressive visits that Mother failed and refused to accomplish.

2. *K.S.A. 38-2269(b)(8)—lack of effort to adjust circumstances, conduct, or condition*

The district court also found Mother unfit under K.S.A. 38-2269(b)(8) and K.S.A. 38-2269(c)(3) for similar and somewhat overlapping evidence. Given that a single factor is sufficient, this court will address only one of these—whether clear and convincing evidence supported the district court's finding that Mother lacked effort to adjust her "circumstances, conduct or conditions to meet the needs of her children." K.S.A. 38-2269(b)(8); see K.S.A. 38-2269(f). Mother needed to adjust her circumstances to facilitate reintegration. At a minimum, this meant she needed to have safe, stable housing and to ensure her ability and availability to meet the children's emotional and physical needs.

First, Mother failed to adjust her circumstances to ensure her regular, consistent availability for visits to maintain in-person unsupervised visits that met the mental and emotional needs of the children. Failure to maintain visits is just one part of the equation—Mother did not adjust her circumstances to ensure the children's needs were met through those visits. There was testimony that the children's behavior changed for the worse after unsupervised visits with Mother, that Mother was unable to control the children's behavior during in-person and virtual visits, and that the children were not engaged in virtual visits. Mother's failure to complete the PMTO parenting class also demonstrates a failure to adjust her circumstances by working to develop parenting skills necessary for her children's needs. Essentially, Mother lacked the parenting skills to

13

successfully meet the children's needs during visits and failed to take the steps to overcome that deficiency which contributed to Mother having only supervised weekly visits at the time of the hearing. Savannah testified that she did not see improvement in Mother's parenting over the course of the case.

Second, Mother failed to maintain or obtain a safe, stable home during the pendency of the case. Although Mother appeared to have potentially appropriate housing in Kansas City, Missouri, for about six months between December 2022 and June 2023, that housing was pending required approval from the State of Missouri through the Interstate Compact on the Placement of Children (ICPC). KVC was notified on April 11, 2023, that Missouri would not approve Mother's housing, citing Mother's lack of communication; lack of documented domestic violence assessment, substance abuse assessment, and mental health assessment; and an insufficient number of bedrooms for the children. The lack of approval from Missouri was only part of the problem because Mother was then evicted from that apartment in June 2023.

There was no other evidence of potentially appropriate housing until Mother moved in with her grandmother in December 2023. However, Mother failed to provide KVC with the necessary paperwork for the background checks for the adults living in that home, which was required for housing approval. Additionally, Mother's former probation officer testified that Mother's housing arrangement with her grandmother might jeopardize the grandmother's housing stipend. At the time of trial, KVC did not believe that Mother had an appropriate home for the children.

Third, Mother failed to maintain employment or demonstrate an ability to meet the children's physical needs. There was no evidence that Mother was unable to work, and Mother testified at the hearing that she had several jobs throughout the case. However, the KVC case manager testified that the last time Mother provided employment documentation was in July 2022—about a year and a half before the hearing. While

poverty or lack of financial means is not a reason to find a parent unfit, Mother needed to show an ability to meet the children's basic needs. This also required a reliable means of transportation to visit the children or get them to their appointments, which can include public transportation or rideshare programs. Although Mother identified a plan to use public transportation, she frequently cited to lack of transportation to excuse her failure to participate in visits. Mother was unable to effectuate a transportation plan or demonstrate employment to meet the children's needs.

The KVC case manager testified that at the time of the hearing there was no home in which to integrate the children with Mother; there was no pending ICPC in place for the home; there was no proof of employment or financial ability to care for the children; and while there was a plan to use public transportation, that plan had been unsuccessful to meet Mother's needs to ensure her attendance at visits. Mother argues she was "well on her way" to adjusting her circumstances, but her efforts were thwarted by her extradition to Minnesota in August 2023. Although Mother's circumstances were challenging, there was sufficient time before her incarceration to adjust her circumstances, and the evidence shows Mother failed to make those adjustments. Prior to Mother's incarceration, she did not have safe, stable housing; she failed to provide proof of employment for a year; and Mother was still unable to have in-person unsupervised visits with the children. Moreover, Mother's extradition to Minnesota resulted from her own illegal conduct—not some happenstance of unfortunate events.

Mother tested positive for illegal drugs at times throughout the case, but her drug assessments did not result in any further recommendations in the reintegration plans. KVC employees expressed concerns about Mother's truthfulness during the drug assessment, but that concern does not constitute clear and convincing evidence of unfitness. There were also reports of "odd" behavior from Mother at times, but there is no evidence connecting that behavior to illegal drug use or alcohol abuse. While one might logically believe that Mother's illegal drug use contributed to some of her circumstances,

15

the record lacks clear and convincing evidence to support a finding that her dangerous drug use rendered her unable to care for the physical, emotional, or mental health of the children under K.S.A. 38-2269(b)(3).

While Mother took some steps to adjust her circumstances, she ultimately made little progress over the length of the cases. Although the district court found Mother unfit under several categories, a finding of unfitness under just one is sufficient. This court finds clear and convincing evidence that Mother is unfit based on her lack of effort to adjust her circumstances, conduct, or conditions to meet the needs of her children under K.S.A. 38-2269(b)(8) and her failure to maintain regular visitation, contact, or communication with her children under K.S.A. 38-2269(c)(2).

3. *Unfitness unlikely to change for the foreseeable future*

After finding clear and convincing evidence that the parent is "unfit by reason of conduct or condition which renders the parent unable to care properly for a child," the court may only proceed to terminate a parent's rights if it also finds clear and convincing evidence that "the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a). The foreseeable future is viewed from the perspective of a child, not from the perspective of an adult. *In re R.S.*, 50 Kan. App. 2d 1105, 1117, 336 P.3d 903 (2014); see K.S.A. 38-2201(b)(4). This child time consideration acknowledges that children and adults have different perceptions of time and supports the children's right to permanence within a reasonable timeframe. *In re M.S.*, 56 Kan. App. 2d 1247, 1263, 447 P.3d 994 (2019); see K.S.A. 38-2201(b)(4) (requiring that the Code be liberally construed so as to acknowledge this difference and dispose of proceedings without unnecessary delay). Mother argues the district court ignored her progress when it found her unfitness was unlikely to change in the foreseeable future.

16

At the time of the hearing in February 2024 the children were about 11, 9, and 4 years old, and had spent more than two and a half years of their lives outside of Mother's custody. In that timeframe, Mother failed to secure appropriate housing, failed to have a reliable transportation plan that facilitated consistent in-person visits with the children, failed to maintain regular visitation with the children, and failed to demonstrate financial stability to meet the children's needs. Although Mother showed effort through her completion of some assessments, attendance at visits with her children, and engagement in some of the available services, more often than not, she failed to actively participate or even meet minimum requirements in her children's cases. Almost two years into this pending case, Mother left the state—in violation of her probation and despite her children's custody cases—and engaged in conduct that led to her incarceration. Mother's choice to forgo visits with her children to engage in that conduct is yet more evidence that Mother's condition was unlikely to change in the foreseeable future. At some point, these children need finality in their circumstances. At the time of the hearing Mother was still only exercising supervised visits without approved housing—far from reintegration—and there was no timely plan for resolution. Thus, when viewed in the most favorable light to the State, there is clear and convincing evidence supporting the district court's finding that Mother's unfitness was unlikely to change in the foreseeable future.

II.     THE CHILDREN'S BEST INTERESTS

After a court determines that a parent's unfitness is unlikely to change in the foreseeable future, it must then determine whether termination of the parental rights is in the best interests of the child. When considering a child's best interests, the court should place primary consideration on the physical, mental, and emotional health of the child. K.S.A. 38-2269(g)(1).

On appeal, this court reviews the district court's best interests determination for an abuse of discretion. *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 60, 392 P.3d 68 (2017). "Under this well-known standard, a district court abuses its discretion if its decision is 'arbitrary, fanciful, or unreasonable,' or based on an error of fact or law." *In re K.W.D.*, 321 Kan. 100, 116, 573 P.3d 221 (2025) (quoting *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 [2022]). Mother, as the party asserting an abuse of discretion, carries the burden of establishing such abuse. *In re K.E.*, 294 Kan. 17, 23, 272 P.3d 28 (2012).

Mother argues the district court erred in finding termination of her parental rights was in the children's best interests because it failed to consider the children's physical, mental, and emotional needs. Contrary to Mother's assertions, the district court cited several considerations related to the children's physical, mental, and emotional needs, including Mother's failure to provide safe, stable housing; Mother's inconsistency in visitation; Mother's inability to handle the children's behavioral needs; and Mother's involvement with domestic violence related to C.L., including the shooting to which C.L. testified.

Savannah, the KVC case manager, testified at the hearing that she had regular contact with the children's placements and was aware of their needs, including special healthcare and therapeutic needs. She also testified that Chris and Blake were in good placements with their foster homes. After almost two years of working on the cases and getting to know the children, Savannah testified that she believed termination of parental rights and adoption of the children was in the children's best interests.

Mother claims no error of law and cites no error of fact regarding the district court's determination—and this court finds none. Moreover, under these circumstances, this court cannot say the district court's determination was arbitrary, fanciful, or unreasonable. Mother has failed to show the district court abused its discretion in finding that termination of her parental rights was in the children's best interests.

CONCLUSION

Clear and convincing evidence supports the district court's determination that Mother was unfit pursuant to K.S.A. 38-2269(b)(8) and (c)(2). After more than two and a half years in State custody, Mother has failed to adjust her circumstances, conduct, or conditions to meet the needs of her children or to maintain regular visitation, contact, or communication with her children to facilitate reintegration. Given the length of time and progression of this case, there was also clear and convincing evidence that Mother's unfitness was unlikely to change in the foreseeable future. Finally, Mother has failed to show that the district court abused its discretion in determining that terminating her parental rights was in the best interests of her three children at issue here. The district court's judgment is accordingly affirmed.

Affirmed.